## ZENITH RADIO CORPORATION, Appellant,

v.

## The UNITED STATES, et al., Appellees.

### Appeal No. 83–590.

United States Court of Appeals, Federal Circuit.

June 27, 1983.

---

Frederick L. Ikenson, Washington, D.C., for appellant. With him on brief were J. Eric Nissley, Washington, D.C., and Philip J. Curtis, Glenview, Ill., of counsel.

Sheila N. Ziff, Washington, D.C., for appellees. Robert H. Huey and Rodney F. Page, Washington, D.C., were on brief for appellees, Toshiba Corp., Toshiba America, Inc., and Toshiba Hawaii, Inc.

Lawrence R. Walders, Washington, D.C., for intervenors. With him on brief were H. William Tanaka and Patrick O'Leary, Washington, D.C.

Stuart M. Rosen, New York City, was on brief for defendant-intervenor, Matsushita Electric Industrial Co., Ltd., et al.

Gail T. Cumins, New York City, was on brief for defendant-intervenor, Sanyo Electric, Inc.

Peter J. Gartland, New York City, was on brief for defendant-intervenor Sharp Electronic Corp.

Thomas P. Ondeck, Washington, D.C., was on brief for defendants-intervenors, Mitsubishi Electronic Corp., and Mitsubishi Electric Sales America, Inc.

Brian S. Goldstein, New York City, was on brief for defendant-intervenor, The General Corp. of Japan.

Before MARKEY, Chief Judge, DAVIS, NICHOLS, BALDWIN and NIES, Circuit Judges.

BALDWIN, Circuit Judge.

This appeal is from a decision of the United States Court of International Trade (trial court) denying the request of Zenith Radio Corporation (Zenith) for a preliminary injunction to prevent liquidation of entries of certain television receivers subject to dumping duties. The trial court's denial of injunctive relief was based on a finding that Zenith failed to show that it will suffer irreparable harm in the absence of an injunction. We reverse and remand.

## Background

Zenith, a United States manufacturer of television receivers, filed an action in the trial court in June, 1981, challenging an annual review determination by the United States Department of Commerce (Commerce), published in the *Federal Register* on June 5, 1981, 46 Fed.Reg. 30163. The challenged annual review was undertaken pursuant to section 751 of the Trade Agreements Act of 1979, which requires Commerce to review certain antidumping duty orders and findings each year. 19 U.S.C. § 1675 (Supp. V 1981) (hereinafter section 751). The review determination establishes the margins used to calculate the amount of dumping duties to be assessed on merchandise entered during the one year period under review. In addition to setting the margin used to assess dumping duties on entries of merchandise during the one year review period, the review determination is used to estimate the amount importers must deposit on entries occurring after the review period ends until Commerce completes and publishes the next section 751 review. 19 U.S.C. § 1675(a)(2) (Supp. V 1981).

The determination challenged by Zenith alters the margins used to assess dumping duties on entries of Japanese television receivers subject to dumping duties under T.D. 71–76, 5 Cust.Bull. 151 (1971). The merchandise involved in this case was entered or withdrawn from warehouse between April 1, 1979 and March 31, 1980 (the '79–'80 review period). For the importers involved in this case, the determination reduces the dumping margins previously required under T.D. 71–76 so that zero or minimal dumping duties will be assessed on entries during the review period. A decision in Zenith's favor on the issues raised by its action challenging the annual review determination could significantly increase the amount of dumping duty that should be assessed on the entries that occurred during the '79–'80 review period. Since Commerce has not completed the next section 751 review of T.D. 71–76, the determination challenged by Zenith is still used to estimate deposit amounts for entries after March 31,

1980. The next published section 751 review will abrogate the effect of the challenged determination on deposit amounts by establishing the margin to be used for assessment of actual dumping duties on entries after March 31, 1980, and for estimating deposit amounts on subsequent entries. The errors complained of by Zenith are not alleged to be continued in subsequent reviews by Commerce. Zenith's action is directed only to the review determination for the '79–'80 review period.

On December 10, 1981, Zenith moved for a preliminary injunction *pendente lite* to prevent liquidation of entries of merchandise occurring during the '79–'80 review period. The government agreed not to liquidate the subject entries until the trial court could rule on the request for a preliminary injunction. On November 18, 1982, the trial court denied Zenith's request for a preliminary injunction on the sole ground that Zenith failed to demonstrate a likelihood of irreparable injury in the absence of an injunction. The trial court did not consider any other factors traditionally assessed in deciding whether injunctive relief should be granted or denied. Zenith appealed to this court from the trial court's decision and was granted an injunction against liquidation pending this court's decision. In addition to the United States government, importers and manufacturers who were defendant-intervenors at the trial level filed a brief and appeared as appellees in opposition to Zenith's appeal.

On appeal, Zenith raises three issues: (1) whether an injunction must issue under the All Writs Act, 28 U.S.C. § 1651 (1980), to preserve this court's and the trial court's jurisdiction to review the challenged annual review determination; (2) whether the trial court abused its discretion by considering only irreparable injury instead of considering all factors traditionally assessed in deciding whether or not an injunction should issue; and (3) whether irreparable injury has been established. We hold that Zenith has established irreparable injury sufficient to require the trial court to consider all

appropriate factors in deciding whether to grant or deny an injunction.

## OPINION

■ To support its request for an injunction under the All Writs Act, Zenith relies primarily on two cases of the United States Supreme Court: *FTC v. Dean Foods Co.,* 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966); and *Scripps-Howard Radio, Inc. v. FCC,* 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942). These cases confirm the authority of appellate courts to entertain requests for injunctive relief under the All Writs Act, but they do not compel issuance of an injunction in any particular circumstances. In this case the trial court has acted on Zenith's motion for a preliminary injunction, denying relief for Zenith's failure to establish irreparable harm. Our task is to determine whether the trial court committed an error of law or abused its discretion in denying Zenith's request. *S.J. Stile Assoc. Ltd. v. Snyder,* 646 F.2d 522 (Cust. & Pat.App.1981). In view of our holding that Zenith has established irreparable injury, we do not reach the issue of the need for an injunction under the All Writs Act to preserve jurisdiction.

To prevail on its motion for a preliminary injunction, Zenith must show (1) that it will be immediately and irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors the petitioner. *S.J. Stile Assoc. Ltd. v. Snyder,* 646 F.2d at 525; *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958). The burden that Zenith must meet to establish irreparable injury was elaborated by the CCPA in the *Stile* case as follows:

> Only a viable *threat of serious harm which cannot be undone* authorizes exercise of a court's equitable power to enjoin before the merits are fully determined. *Parks v. Dunlop,* 517 F.2d 785 (CA 5 1975). A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury

is great. A presently existing, actual threat must be shown.

646 F.2d at 525. (Emphasis added.) (Citations omitted.) To establish a "viable threat of serious harm that cannot be undone," Zenith contends that without an injunction, it will be deprived of any opportunity to obtain a remedy for assessment of inadequate dumping duties on entries during the '79–'80 review period. The loss of a remedy for assessment of inadequate dumping duties would relieve Zenith's competitors of a significant liability and abrogate Zenith's right to judicial review.

The trial court, however, denied injunctive relief because Zenith did not submit facts or data showing specific commercial injury that Zenith will suffer as a result of liquidation. The trial court supported its conclusion that liquidation cannot constitute irreparable harm, absent such a specific showing of injury, with statements made by Congress when the Customs Court (now the Court of International Trade) was given authority in 1979 to enjoin liquidation. Congress then characterized injunctive relief as an extraordinary measure, a form of relief that should not be granted in the ordinary course of events. *Zenith Radio Corp. v. United States,* 553 F.Supp. 1052, 1054 (CIT 1982). The comments relied on by the trial court simply explained why Congress specified four criteria, parallel to those recited in *Stile,* that the Customs Court had to consider before enjoining liquidation. We agree that injunctive relief is to be granted only in extraordinary circumstances. We also acknowledge that evidence of specific competitive injury to Zenith would establish a more compelling showing of irreparable injury warranting injunctive relief. *Smith-Corona Group, Consumer Products Division v. U.S.,* 507 F.Supp. 1015 (CIT 1980). But general statements regarding the extraordinary nature of preliminary injunctive relief do not help resolve whether Zenith has shown irreparable injury needed to at least preclude denial of an injunction without consideration of the other factors recited in *Stile.* Analysis of the issue in this case must begin with the effect of liquidation on Zenith's

challenge to the section 751 review determination.

■ In this case, we conclude that liquidation would indeed eliminate the only remedy available to Zenith for an incorrect review determination by depriving the trial court of the ability to assess dumping duties on Zenith's competitors in accordance with a correct margin on entries in the '79–'80 review period. The result of liquidating the '79–'80 entries would not be economic only. In this case, Zenith's statutory right to obtain judicial review of the determination would be without meaning for the only entries permanently affected by that determination. In the context of Congressional intent in passing the Trade Agreements Act of 1979 and the existing finding of injury to the industry underlying T.D. 71–76, we conclude that the consequences of liquidation do constitute irreparable injury.

Without a preliminary injunction, all of the entries occurring during the review period will be liquidated immediately, with dumping duties assessed in accordance with the margin set by the review determination. This result is required, in the absence of a preliminary injunction, by two sections of the Trade Agreements Act of 1979. Section 516A(e) permits liquidation in accordance with a favorable decision of the trial court, or this court, only on merchandise entered after the court decision is published or on entries "the liquidation of which was enjoined under subsection (c)(2)." 19 U.S.C. § 1516a(e) (Supp. V 1981). In addition, section 516A(c)(1) of the Trade Agreements Act of 1979 provides, in pertinent part:

(c) *Liquidation of entries.*

(1) *Liquidation in accordance with determination.* Unless such liquidation is enjoined by the court under paragraph (2) of this subsection, entries of merchandise of the character covered by a determination of the Secretary, the administering authority, of the Commission contested under subsection (a) shall be liquidated in accordance with the determination of the Secretary, the administering authority, or the Commission * * *.

19 U.S.C. § 1516a(c)(1) (Supp. V 1981).

The statutory scheme has no provision permitting reliquidation in this case or imposition of higher dumping duties after liquidation if Zenith is successful on the merits. Once liquidation occurs, a subsequent decision by the trial court on the merits of Zenith's challenge can have no effect on the dumping duties assessed on entries of television receivers during the '79–'80 review period. Any change in deposit amounts that might be required would be transient and could not affect the amount of dumping duty actually assessed on the '79–'80 entries or any subsequent entries. The court would be powerless to grant the only effective remedy in response to Zenith's request for review: assessment of correct dumping duties on entries occurring during the '79–'80 review period. Not even prospective relief will be available to Zenith for entries in the '79–'80 review period once liquidation occurs. Judicial review of the challenged section 751 determination will therefore provide no tangible benefit for Zenith, making that review unavailing. Even though the '79–'80 imported articles have already been sold and the increased duties (if Zenith ultimately prevails) will go to the government, not Zenith, Zenith still has a strong, continuing, commercial-competitive stake in assuring that its competing importers will not escape the monetary sanctions deliberately imposed by Congress. Defeat of that strong congressionally recognized competitive interest and the abrogation of effective judicial review are sufficient irreparable injury here.

One of the factors supporting our conclusion, and setting this case apart from others, is the fact that injury to the domestic television industry from dumping of television receivers by Japanese importers has already been established. The United States Tariff Commission (now, International Trade Commission (ITC)) determined that the domestic television industry is being injured by dumped imports from Japan in 1971. *Television Receiving Sets From*

*Japan,* Investigation No. AA1921–66, USTC Public. 367, 36 Fed.Reg. 4576 (1971). This finding of injury was one of the conditions precedent to publication of T.D. 71–76. The continuing merit of the injury determination was recently confirmed when the ITC reconsidered but refused to revoke the earlier injury determination. *Television Receiving Sets From Japan,* Investigation No. 75–TA–2, USITC Public. 1153, 46 Fed. Reg. 32702 (1981). The finding of injury from dumped merchandise to the domestic television industry, which includes Zenith, is therefore presumed to have continuing efficacy now and throughout the challenged '79–'80 review period. The only remedy available to Zenith, the domestic television industry, and the public, is assessment of correct dumping duties on offending merchandise.

A second factor important to our decision is the desire for effective enforcement of antidumping laws expressed by Congress when it passed the Trade Agreements Act of 1979. Before passage of the Trade Agreements Act of 1979, the remedy for a domestic manufacturer challenging the margin used for assessment of dumping duties was prospective only since a court order increasing the amount of dumping duty that was appropriate could only be applied to entries occurring after the final court order was published. The Trade Agreements Act of 1979 altered this scheme by giving the Customs Court power to enjoin liquidation of entries pending the court's decision. 19 U.S.C. § 1516a(c)(2) (Supp. V 1981). The grant of this injunctive authority was described by Congress as "a major change in prior law" which had been formulated on the presumption of correctness of the administrative determination. H.R.Rep. No. 96–317, 97th Cong., 1st Sess. 182 (1979). Congress modified this presumption, without eliminating it, by permitting the Customs Court to enjoin liquidation in appropriate circumstances. The greatest concern warranting modification of the prior law was the inadequacy of prospective relief. H.R.Rep. No. 96–317, 97th Cong., 1st Sess. 182 (1979).

The grant of this injunctive power was only one part of a larger pattern of reforms enacted to improve enforcement of the antidumping laws and to give domestic interested parties the right to obtain effective judicial review of determinations in antidumping and countervailing duty cases. When explaining changes significantly enlarging the availability and scope of judicial review, Congress said:

The changes which title X effects are purposed upon the elimination of several discernible deficiencies which detracted from the effective enforcement of earlier laws and particularly those relating to antidumping and countervailing duties. The new provisions contemplate greater access to the Customs Court for an expanded number of parties, more opportunity for interlocutory judicial review during antidumping and countervailing duty processings, and expedited appeals from administrative determinations.

The implementing legislation will preserve an interested party's right to challenge final determinations issued by either the administering authority or the U.S. International Trade Commission in antidumping and countervailing duty cases while enlarging the opportunities for judicial review of interim decisions made during the course of an investigation.

S.Rep. No. 96–249, 96th Cong., 1st Sess. 245, *reprinted in* 1979 U.S.Code Cong. & Ad. News 381, 630–631. Congress deliberately gave interested parties the right to obtain effective judicial review of section 751 review determinations to aid effective enforcement of antidumping laws. A conclusion that no irreparable harm is shown when that judicial review is rendered ineffective by depriving the interested party of the only meaningful correction for the alleged errors, would be inconsistent with the actions taken by Congress to correct deficiencies in prior enforcement activity under the antidumping laws. Accordingly, the inability of reviewing courts to meaningfully correct the review determination is irreparable injury that must be considered by the trial court along with the other pertinent

factors recited in *Stile* to determine whether or not an injunction should issue.

We therefore *reverse* and *remand* to the Court of International Trade for further consideration of Zenith's request for preliminary relief.

REVERSED AND REMANDED.

NIES, Circuit Judge, concurring.

I concur with the majority that Zenith's motion for a preliminary injunction must be reconsidered by the trial court. However, in my view, Zenith may or may not have proved sufficient injury under the circumstances of this case to warrant the issuance of a preliminary injunction.

I am entirely in agreement with the trial court in rejecting plaintiff's argument that "any liquidation of entries prior to a final decision would constitute irreparable harm *per se*" and that the granting of a preliminary injunction enjoining the administering authorities from liquidating entries should be the exception rather than the general rule. Moreover, I also agree that the requirements which must generally be met before a preliminary injunction is granted are a threat of immediate irreparable harm; a showing that the public interest would be better served by issuing than by denying the injunction; a likelihood of success on the merits; and the balance of hardship on the parties-in-interest favors the party seeking injunctive relief (*S.J. Stile Associates, Ltd. v. Dennis Snyder,* 646 F.2d 522 (Cust. & Pat.App.1981)). However, I am of the view that, while these factors should be analyzed separately, they must be evaluated as a whole. A very strong showing of public interest in preservation of the status quo, for example, may shore up a minimal showing of direct personal injury to the litigant.

Moreover, I do not believe that rigid rules or requirements are appropriate in the exercise of equitable power. Other factors, not enumerated above, may also affect the evaluation of a litigant's need for an injunction.

I see no danger that injunctions against liquidation will become the norm if Zenith is found to be injured on the basis of something less than the detailed showing of harm to its current business comparable to that established by the plaintiff in *Smith-Corona Group, Consumer Products Division v. United States,* 507 F.Supp. 1015 (C.I.T. 1980). Likelihood of success on the merits and balancing of hardships on the parties present formidable obstacles to the granting of an injunction, particularly where the injury factor is weak.

In this appeal, the trial court's decision presents us with an analysis of the single factor of irreparable harm to Zenith. The finding below was not that Zenith will suffer no harm. Rather, the court held that such harm was not irreparable. In some instances no analysis of other factors may be necessary. However, I think such cases are rare and this case is not one of them. This case, in my view, requires an evaluation and balancing of all factors raised by Zenith.