Slip Op. 00-150

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____

| | |
|---|---|
| SHANDONG HUARONG GENERAL GROUP CORPORATION, LIAONING MACHINERY IMPORT & EXPORT CORPORATION, SHANDONG MACHINERY IMPORT & EXPORT CORPORATION, AND TIANJIN MACHINERY IMPORT & EXPORT CORPORATION | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : <br> : |
| UNITED STATES, | : <br> : |
| Defendant, | :      **Court No. 00-08-00431** <br> : |
| and | : <br> : |
| O. AMES COMPANY, | : <br> : |
| Defendant-Intervenor | : |

_____ :

[Plaintiff's motion for preliminary injunction is denied.]

*Hume & Associates* (Robert T. Hume), Washington, D.C., for Plaintiffs.

*David W. Odgen*, Assistant Attorney General; *Kenneth S. Kessler*, United States Department of Justice, Civil Division, Commercial Litigation Branch; John F. Koeppen, United States Department of Commerce, Office of Chief Counsel, for Defendant.

*Wiley, Rein & Fielding* (Charles Owen Verrill, Jr., Eileen P. Bradner, Timothy Brightbill, Nicholas A. Kessler), Washington, D.C., for Defendant-Intervenor.

Dated: November 13, 2000

## MEMORANDUM OPINION

**CARMAN, Chief Judge:**

Shandong Huarong General Group Corporation (SHGC or Plaintiff),[1] moves this Court

for a preliminary injunction to enjoin the collection of antidumping duty cash deposits at the

28.96% rate established by the United States Department of Commerce (Commerce) in *Amended*

*Final Results of Antidumping Duty Administrative Reviews: Heavy Forged Hand Tools from the*

*People's Republic of China*, 65 Fed. Reg. 50,499 (August 18, 2000) (*Amended Results*).  This

injunction would cover future imports of bars over 18 inches in length, track tools and wedges

exported by Plaintiff that are classified under the Harmonized Tariff Schedules of the United

States subheading 8205.59.30., and would remain in effect until final judicial review of

Plaintiff's underlying legal challenge.  Defendant and Defendant-Intervenor object to the

issuance of a preliminary injunction.

## BACKGROUND

On February 19, 1991, Commerce imposed antidumping duty orders on heavy forged

hand tools, finished or unfinished, with or without handles, from the People's Republic of China.

*See Heavy Forged Hand Tools from the People's Republic of China*, 56 Fed. Reg. 6,622 (Feb.

19, 1991).  On February 11, 1999, Commerce published notice of opportunity to request an

administrative review of imports of merchandise entered between February 8, 1998 and January

31, 1999 subject to the relevant antidumping orders. (1998-1999 Administrative Review).  *See*

*Opportunity to Request Administrative Review*, 64 Fed. Reg. 6,878 (Feb. 11, 1999).  Plaintiff and

three other exporters of subject merchandise responded to Commerce's notice and requested that

---

[1] Although there are four parties to the underlying litigation, Plaintiff SHGC is the only party seeking the
preliminary injunction.

Commerce review their exports entered into the United States during the relevant time period.[2]

In addition, Defendant-Intervenor responded and requested that Commerce conduct

administrative reviews of each class of subject merchandise exported by the four respondents.

On March 29, 1999, Commerce formally initiated its administrative review. *See Heavy Forged*

*Hand Tools from the People's Republic of China*, 64 Fed. Reg. 14,860 (Mar. 29, 1999).

On July 13, 2000, Commerce published notice of its final results of the 1998-1999

Administrative Review applying a 23.99% antidumping duty deposit rate on Plaintiff's exports

of subject merchandise. *See 1998-1999 Final Results*, 65 Fed. Reg. at 43,290. On July 17, 2000,

pursuant to 19 C.F.R. §351.224(e), Plaintiff requested that Commerce adjust its final results to

correct a ministerial error caused by Commerce's failure to use surrogate value data for billets

during the entire period of review. On August 18, 2000, Commerce corrected this error, altered

Plaintiff's antidumping duty deposit rates to 28.96% and published notice of its amended results.

*See Amended Results*, 65 Fed. Reg. at 50,500. Prior to the 1998-1999 Administrative Review,

Plaintiff's exports were subject to an antidumping duty deposit rate of 1.27 percent.

On August 25, 2000, Plaintiff filed a complaint with this Court challenging the legality of

Commerce's amendments to the 1998-1999 Administrative Review's final results. On

September 30, 2000, Plaintiff moved this Court for a preliminary injunction enjoining the United

States from collecting antidumping duty cash deposits at the amended rate set by Commerce in

its 1998-1999 Administrative Review amended final results. Plaintiff seeks, during the pendancy

---

[2] Fujian Machinery & Equipment Import & Export Corporation (FMEC) requested that commerce review its exports of: (1) axes/adzes; (2) hammers/sledges; and (3) picks/mattocks. Plaintiff, Shandong Huarong General Group Corporation (SHGC) requested that Commerce review its exports of bars and wedges. Liaoning Machinery Import & Export Corporation (LMC) requested that Commerce review its exports of: (1) bars/wedges; (2) hammers/sledges; and (3) picks/mattocks. Shandong Machinery Import & Export Corporation (SMC) requested that Commerce review its exports of: (1) axes/adzes; (2) bars/wedges; (3) hammers/sledges; and (4) picks/mattocks.

of this litigation, to continue depositing estimated antidumping duties at the 1.27 % rate established by the seventh administrative review. Defendant and Defendant-Intervenor object.

## DISCUSSION

This Court has jurisdiction over the Plaintiff's underlying litigation pursuant to 28 U.S.C. §1581(c) and sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, as amended by 19 U.S.C. §§1516a(a)(2)(A)(i)(I) and (B)(iii). The Plaintiff's motion is properly before this Court pursuant to 28 U.S.C. §2643(c)(1). *See also* 28 U.S.C. §1585 ("The Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States.")

The events precipitating this motion are the same as those in *Shandong Huarong General Group Corp. v. United States*, Slip Op. 00-149 (Ct. Int'l Trade, Nov. 13, 2000) (finding that Plaintiff failed to demonstrate irreparable harm and, therefore, denying Plaintiff's motion for a preliminary injunction) (*Shandong I*). In both cases, Plaintiff challenges the antidumping duty deposit rates set by Commerce during the 1998-1999 Administrative Review. In *Shandong I*, however, Plaintiff challenges the entire final determination issued by Commerce, whereas in the present case, Plaintiff challenges only the legality of Commerce's subsequent amendments to its final determination. Thus, although the legal challenge underlying this case differs from *Shandong I*, the issues pertaining to Plaintiff's preliminary injunction motions are substantially similar. In fact, the briefs submitted by Plaintiff in both *Shandong I* and this case supporting its preliminary injunction motions are almost verbatim as to the key facts and arguments.[3]

---

[3] The only major difference between the two motions is the arguments Plaintiff puts forth supporting its assertion that it will likely prevail on the merits of its case.

As in *Shandong I*, following Commerce's final determination in the 1998-1999 Administrative review, Plaintiff Shandong Huarong's exports of subject merchandise were subjected to an antidumping duty cash deposit rate of 28.96 percent. Plaintiff contends that the imposition of this rate has resulted in the cancellation of all existing and future orders by Plaintiff's "major" United States customer. Plaintiff initiated a lawsuit challenging the legality of Commerce's amendment to the 1998-1999 Administrative Review final determination, and now seeks to preliminarily enjoin the collection of cash deposits at the challenged rate.

It is well settled that a preliminary injunction is an extraordinary remedy. Therefore, before the Plaintiff can be granted such relief it must establish: (1) in the absence of a preliminary injunction, it will suffer immediate and irreparable injury; (2) the balance of hardships tilts in its favor; (3) there is a likelihood of success on the merits; and (4) the grant of a preliminary injunction is not contrary to public interest. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *Zenith Ratio Corp. v. United States,* 710 F.2d 806, 809 (Fed. Cir. 1983). If Plaintiff fails to prove any one of these factors, its motion must fail. *See Shree Rama Enterprises v. United States*, 983 F. Supp. 192, 194 (Ct. Int'l Trade 1997). For the reasons stated below, this Court finds that Plaintiff has failed to establish it will be immediately and irreparably injured in the absence of a preliminary injunction. Plaintiff's motion, therefore, fails.

Plaintiff argues it will suffer immediate and irreparable injury if it is required to make anticipated antidumping duty deposits at the "exorbitant" deposit rate established by Commerce in the 1998-1999 Administrative Review. Specifically, Plaintiff argues that the imposition of this antidumping duty deposit rate will result in the cancellation of existing and future orders by its "major" United States customer, thereby causing Plaintiff to go out of business. Plaintiff asserts that the "exhorbitant[ly]" high antidumping duty rates were imposed as a result of severe

factual, legal, and procedural errors committed by Commerce during the 1998-1999 Administrative Review. These errors are alleged to have deprived Plaintiff of the procedural safeguards designed to ensure the fair and equitable administration of the antidumping laws. Plaintiff argues that if it is forced out of business as a result of these errors, it will suffer irreparable economic injury and will be deprived of its right to meaningful and effective judicial review.

To establish irreparable injury, Plaintiff bears an extremely heavy burden. *See Queen's Flowers de Colombia v. United States*, 947 F. Supp. 503, 506 (Ct. Int'l Trade 1996). Irreparable injury is a type of injury that is "serious" and "cannot be undone." *Zenith*, 710 F.2d at 809, *quoting*, *S.J. Stile Assoc. Ltd. v. Snyder*, 646 F.2d 522, 525 (CCPA 1981). It is not enough merely to establish a "possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown." *Id.*

As stated, Plaintiff alleges that, in the absence of a preliminary injunction, it will be forced out of business and will lose its right to effective and meaningful judicial review by the imposition of the challenged antidumping duty deposit rates. Courts have long recognized the irreparable injury that is attendant to the loss of effective and meaningful judicial review. *See Zenith* 710 F.2d at 810 (holding that liquidation of entries during the pendency of litigation challenging an administrative review negates a plaintiff's right to meaningful judicial review and, thus, constitutes *per se* irreparable harm); *NMB Singapore Ltd. v. United States*, No. 00-144, slip op. at 9, (Ct. Int'l Trade, Nov. 3, 2000) (extending the *Zenith* rule to cases in which a party challenges an affirmative sunset review determination.) Nevertheless, Plaintiff has failed to establish it would suffer irreparable injury by being forced out of business, and thereby lose its ability to obtain effective and meaningful judicial review.

To support its argument, Plaintiff provides an affidavit from its "major" United States customer stating that it would be unable to continue importing Plaintiff's products as a result of the antidumping duty deposit rates and that all existing and future orders were to be immediately cancelled. This affidavit, however, proves little other than Plaintiff has lost one of its customers in the United States. Although Plaintiff alludes to the "major" role held by this customer, Plaintiff provides no evidence demonstrating how sales to this customer fit within its total sales figures; nor how the loss of these sales will impact its overall financial position. Rather, Plaintiff merely asserts that a substantial percentage[4] of its business is "involved" in the production and sale of subject merchandise and that a significant portion of its business is "linked" to the export of subject merchandise to the United States. This assertion, on its face, provides little support for Plaintiff's argument. Even a cursory examination of Plaintiff's offering indicates that, although a substantial percentage of Plaintiff's business is "involved" with or "linked" to the production and sale of subject merchandise, Plaintiff is not wholly committed to manufacturing subject merchandise for export to the United States. A significant amount of Plaintiff's business apparently is directed toward other outlets. Evidently, based upon current production rates, a substantial percentage of subject merchandise either has been sold or could be sold to customers that have not cancelled their orders. Plaintiff fails to demonstrate how the loss of its "major" customer will adversely affect its total sales outlook in light of the availability of alternative consumer markets. Accordingly, not only does Plaintiff's evidence fail to illustrate how the loss of a single customer would result in the end of its business life, this evidence appears to establish that Plaintiff has viable alternative markets in which to sell its products. Thus, even accepting that Plaintiff will lose the percentage of sales alleged in its brief, the presence of alternative

---

[4] Because of the proprietary nature of much of Plaintiffs' supporting materials, the Court declines to provide specific percentages and numerical information.

markets for a substantial amount of its current production weighs heavily against the conclusion that Plaintiff will be forced out of business.

As stated, Plaintiff's evidence consists solely of an affidavit from its "major customer." Although informative, this Court has held that "affidavits submitted by interested parties are weak evidence, unlikely to justify a preliminary injunction." *Shree Rama Enterprises v. United States,* 983 F. Supp. 192, 195 (Ct. Int'l Trade 1995). Plaintiff has not bolstered this affidavit through independent evidence indicating exactly how and when these lost sales would force it out of business. *See Companhia Brasileira Carbureto de Calcio v. United States*, 18 CIT 215, 217 (1994) ("No hard evidence was submitted to the court indicating what specific effect loss of such sales would have upon [plaintiff]."). For example, Plaintiff has offered no proof that it would be unable to obtain outside financing to cover the costs of the higher antidumping duty deposit rate and thereby sustain its business throughout the course of this litigation. *See Chilean Nitrate Corp. v. United States*, 11 CIT 538, 541 (1987). Similarly, no financial statements have been proffered indicating that Plaintiff does not possess the capital reserves necessary to remain viable during this litigation. *See id.*

Plaintiff SHGC has failed to provide "marketing studies, written financial data or other hard evidence of the serious permanent harm which would result from denial of the injunction…." *Shree Rama Enterprises,* 983 F. Supp. at 195, *quoting*, *Chilean Nitrate*, 11 CIT at 541. In light of the deposit rates in effect through virtually the entire life of the antidumping order at issue, it would seem Plaintiff SHGC would be unable to meet this burden of proof. Between 1983 and 1996, Plaintiff SHGC did not directly import subject merchandise into the United States, but conducted its sales through a separate company licensed to export to the

United States – Plaintiff Shandong Machinery Import & Export Corporation (SMC).[5]  It was only after 1996 that Plaintiff SHGC directly exported subject merchandise to the United States and participated in any of the relevant administrative reviews.  Accordingly, prior to 1996 Plaintiff SHGC's sales would have been subject to the country-wide rate applicable to the People's Republic of China (PRC) or the company-specific rate applicable to Plaintiff SMC. Between the date the antidumping duty order was originally imposed and 1996, the average antidumping duty rate on subject merchandise applicable to Plaintiff SMC was 32.92 percent. During the same time period, the average PRC country-wide antidumping duty rate was 49.04 percent.  Although acknowledging that the difference between an antidumping duty deposit rate of 1.26% and 28.96% is significant, the Court notes that the current 28.96% deposit rate is substantially less than the average rate that was in effect throughout virtually the entire course of the antidumping order.  Plaintiff SHGC was clearly able to make sales in the United States and to remain in business despite these significant antidumping duty rates.  Plaintiff SHGC fails to adequately explain why now, in the face of lower antidumping duty rates, it is incapable of maintaining a viable business.

The present case is readily distinguishable from another decision that has granted injunctive relief against the collection of estimated antidumping duty deposits.  In *Queen's Flowers de Colombia v. United States*, 947 F. Supp. at 509, this Court granted certain plaintiffs a preliminary injunction enjoining the collection of antidumping duty deposits during the course of their litigation challenging an administrative review determination.  Crucial to the Court's decision was the fact that the subject merchandise was a highly "perishable good tailored to the unique demands of the United States flower market." *Id*. at 506.  Because of this, "alternative

---

[5] As stated previously, although Plaintiff SMC is a party to the underlying litigation, it is not seeking a preliminary injunction to enjoin collection of antidumping duty cash deposits at the challenged rate.

markets [did] not exist in which the companies [could] sell their excess capacity to stay in business." *Id.* at 506-507. The Court further emphasized that the "new deposit rate is… very high, relative to the rates set in the prior administrative review." *Id*. at 507. In the present case, the subject merchandise is not perishable. Although Plaintiff asserts that the merchandise produced for its "major" customer conformed to specific design requirements, was subject to the customer's patents and, therefore, could not be re-sold, this Court was not presented any evidence substantiating this claim. Similarly, Plaintiff has not produced any evidence establishing that it would go out of business during the year 2000, thereby negating the possibility of selling its excess inventory in the future. This is significant because on the anniversary date of the 1998-1999 administrative review, Plaintiff could petition Commerce for a new administrative review and potentially lower its antidumping duty deposit rate. It is unclear why Plaintiff could not simply store the non-perishable subject merchandise that would have been sold to its "major" customer pending either the successful outcome of this litigation or a new administrative review determination in 2001.

In sum, this Court finds that Plaintiff has failed to prove that it would suffer irreparable harm by being forced out of business through the imposition of the challenged antidumping duty deposit rates. Although the Court acknowledges that Plaintiff may suffer some economic injury as a result of the higher deposit rates, there is no proof that this injury would be irreparable. Accordingly, this Court finds that Plaintiff would not suffer irreparable injury if its motion for injunctive relief were denied.

Because this Court finds that in the absence of a preliminary injunction Plaintiff would not suffer irreparable injury, it is not necessary to examine the remaining three factors in depth. "[T]he absence of an adequate showing with regard to any one factor may be sufficient, given

the weight or lack of it assigned the other factors, to justify the denial [of a preliminary injunction]." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). A brief discussion of these factors, however, will further establish that Plaintiff is not entitled to preliminary injunctive relief. As to the likelihood of success on the merits, the Court acknowledges that the Plaintiff has raised "serious, substantial, difficult and doubtful" legal questions that are appropriate for litigation. The failure, however, to establish irreparable harm significantly raises the burden imposed on Plaintiff to prove a likelihood of success on the merits. By statute, Commerce's administrative review determinations are presumed to be correct and the burden of proving otherwise rests exclusively upon the party challenging such decision. *See* 28 U.S.C. §2639(a)(1). On the papers before this Court, it is unclear whether Plaintiff can surmount this burden. Plaintiff, therefore, has failed to satisfy this requirement. Finally, this Court finds that neither the public interest, nor the balance of hardships weighs significantly in favor of granting the preliminary injunction. The government possesses an interest in protecting itself against default. *See Shree Rama* 983 F. Supp. at 196. To this end, Commerce directed "a cash deposit, bond, or other security" be deposited for every entry of merchandise subject to an antidumping order. *See* 19 U.S.C. §1671d(c)(1)(B)(ii) (1994). Thus, paying deposits pending Court review is an ordinary consequence of the statutory scheme. The public has an interest in ensuring the fair application of the antidumping laws while simultaneously guaranteeing foreign exporters will not default in the satisfaction of their import obligations.

## CONCLUSION

For the reasons stated above, this Court finds that the Plaintiff has failed to satisfy the prerequisites necessary to obtain a preliminary injunction. Accordingly, Plaintiff's motion is hereby DENIED.

                                        _____

                                        Gregory W. Carman,
                                        Chief Judge

Dated: November \_\_\_\_\_, 2000
            New York, NY