Slip Op. 16-13

UNITED STATES COURT OF INTERNATIONAL TRADE

PREMIER TRADING, INC.,

            Plaintiff,

            v.

UNITED STATES,

            Defendant.

Before: Leo M. Gordon, Judge

Court No. 16-00020

**OPINION AND ORDER**

[Plaintiff's motion for preliminary injunction denied.]

Dated: February 11, 2016

    Robert T. Hume, Hume & Associates, LLC, of El Prado, NM argued for Plaintiff Premier Trading, Inc. With him on the brief was Joey C. Montoya.

    Tara K. Hogan, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC argued for Plaintiff United States. On the brief with her were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director and Emma E. Bond, Trial Attorney. Of counsel on the brief was Beth C. Brotman, Senior Counsel, Office of Assistant Chief Counsel for U.S. Customs and Border Protection of New York, NY.

    Gordon, Judge: This is another in a line of cases challenging a negative bond sufficiency determination made by U.S. Customs and Border Protection ("Customs" or "CBP") on certain entries of fresh garlic from the People's Republic of China ("PRC"). See Kwo Lee, Inc. v. United States, 39 CIT ___, 70 F. Supp. 3d 1369 (2015) ("Kwo Lee II"); Int'l Fresh Trade Corp. v. United States, 38 CIT ___, 26 F. Supp. 3d 1363 (2014) ("Fresh Trade"); see also Fresh Garlic from the People's Republic of China, 59 Fed. Reg. 59,209

(Dep't of Commerce Nov. 16, 1994) (antidumping duty order) ("Garlic Order"). In this action Customs has required Plaintiff to post enhanced security in the form of single transaction bonds ("STBs") so that the amounts secured cover Plaintiff's potential antidumping duty liability calculated at the PRC-wide rate rather than a lower combination rate otherwise applicable to Plaintiff's putative exporter and producer, Qingdao Tiantaixing Foods Co., Ltd. ("QTF"). Pl.'s Appl. for a TRO & Mot. for a Prelim. Inj. 2-3 (Jan. 26, 2016), ECF No. 12 ("Pl.'s Mot."). According to Customs, this enhanced bonding is required, inter alia, because the high amount of potential antidumping duties that may be assessed on the subject entries are secured by a comparatively small continuous bond, which places "the revenue [of the United States] in jeopardy." Mem. in Supp. of Def.'s Opp. to Pl.'s App. for TRO & Mot. for Prelim. Inj. 12 (Feb. 8, 2016), ECF No. 16 ("Def.'s Resp.").

Customs is holding Plaintiff's entries of garlic, a perishable item, at several ports of entry until Plaintiff posts the additional security. Plaintiff seeks a preliminary injunction against the enhanced bonding requirement and an order from the court directing Customs to "release Premier Trading, Inc. imports that are subject to enhanced bonding and in accordance with the previously assessed QTF rate as determined by Commerce, currently $0.35/kg." Pl.'s Mot. at 12.[1] The court has jurisdiction under 28 U.S.C. § 1581(i) (2012). Pl.'s Compl. ¶ 7 (Jan. 25, 2016), ECF No. 5 ("Compl.").

---

[1] On this date, the court conducted a hearing on Plaintiff's Application for a Temporary Restraining Order ("TRO") and a Motion for a Preliminary Injunction ("PI"). At this hearing, the parties orally consented to collapsing Plaintiff's request for a TRO into the court's consideration of Plaintiff's motion for a PI.

For the reasons set forth below, Plaintiff's motion is denied.

## Background

The general background of the Garlic Order is outlined in detail in Kwo Lee II and Fresh Trade. Briefly, the PRC-wide rate on garlic is 367.67%, which translates to a cash deposit rate of $4.71/kg. Commerce in 2008 assigned QTF a 32.78% separate rate, equating to a $0.35/kg cash deposit rate. This combination rate is applicable only when QTF is both the producer and the exporter. Fresh Garlic from the People's Republic of China, 73 Fed. Reg. 56,550, 56,552 (Dep't of Commerce Sept. 29, 2008) (final results new shipper review).

In the 20th administrative review of the Garlic Order, covering entries made between 2013 and 2014, Commerce preliminarily applied adverse facts available to QTF for a failure to cooperate. Decision Memorandum for the Preliminary Results of the 2013-2014 Antidumping Duty Administrative Review of Fresh Garlic from the People's Republic of China, A-570-831, at 11-14 (Dep't of Commerce Nov. 30, 2015), available at http://enforcement.trade.gov/frn/summary/prc/2015-30791-1.pdf ("Preliminary Results"). Among the problems Commerce identified were responses QTF provided in its Section A responses, which included information regarding QTF's relationship to the Chinese Government. Commerce concluded that QTF had not demonstrated its independence from the Chinese Government and that it would therefore be considered part of the PRC-wide entity. Id. at 14.

During 2015 Plaintiff made entries of garlic produced and exported by QTF under a continuous bond. CBP initially applied the $0.35/kg cash deposit rate. Following

Commerce's preliminary determination in the 20th administrative review that QTF would be subject to the PRC-wide rate, however, CBP imposed an additional single transaction bond ("STB") condition for release of Plaintiff's entries in the amount of $4.36/kg, representing the difference between QTF's separate rate and the PRC-wide rate. Compl. ¶¶ 11-12, 20-24.

To date, Customs has not released the entries subject to the enhanced bonding requirement. Plaintiff asserts that it is unable to meet the enhanced bonding requirement. As a consequence Plaintiff alleges some of the entries "are already spoiling," and "re-exportation is limited and increasingly futile." Pl.'s Mot. at 5. Plaintiff has also alleged that it has incurred demurrage fees and is susceptible to "contract damages." Id.

**Discussion**

To obtain a preliminary injunction, Plaintiff must establish that (1) it is likely to suffer irreparable harm without a preliminary injunction, (2) it is likely to succeed on the merits, (3) the balance of the equities favors Plaintiff, and (4) the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Wind Tower Trade Coal. v. United States, 741 F.3d 89, 95-96 (Fed. Cir. 2014). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24 (2008) (citing Munaf v. Geren, 553 U.S. 674, 689-90 (2008)); see also Qingdao Taifa Group Co. v. United States, 581 F.3d 1375, 1382 (Fed. Cir. 2009) (noting Supreme Court's "emphasis on the importance of the likelihood of success in the preliminary injunction calculus" in Munaf).

## I. Likelihood of Success on the Merits

The court begins with the "likelihood of success on the merits" criterion because the court believes Plaintiff's motion papers fail to demonstrate a likelihood of success on the merits. At a minimum Plaintiff must demonstrate that it has at least "a fair chance of success on the merits." Qingdao Taifa, 581 F.3d at 1381 (internal quotation marks and citation omitted). Plaintiff has not done so here. Plaintiff's argument on its likelihood of success on the merits reads, in its entirety, as follows:

> Plaintiff is likely to succeed on the merits. Where the movant for a preliminary injunction has made a strong showing of irreparable harm, the burden to show a likelihood of success is necessarily lower. [Kwo Lee, Inc. v. United States, 38 CIT ___, ___, 24 F. Supp. 3d 1322, 1328 (2014)]. As explained, CBP has only cited to the Preliminary Results to articulate a basis for the need to protect the revenue of the United States. However, the Preliminary Results themselves state that the rates will not be assessed until the final results. Further, to Plaintiff's knowledge, there has never been a "national" directive. CBP's conduct by not articulating a basis, denying an explanation and refusing to meet with Plaintiff's counsel should help lead the court in finding that CBP will likely lose on the merits in assessing Plaintiff with the $4.71/kg STB requirement.
>
> As noted, Plaintiff will suffer irreparable injury should this Court deny its request for an injunction, the balance of hardships favors Plaintiff, and Plaintiff has raised serious, substantial issues for argument before the Court. Plaintiff has therefore satisfied the "likelihood of success" requirement.

Pl.'s Mot. at 8.

Missing from this argument is any attempt to analyze the applicable law (statutes, regulations, cases) governing the assessment and collection of antidumping duties, the respective roles played by the U.S. Department of Commerce and Customs, or any substantive analysis of Customs' authority to impose enhanced bonding requirements.

This omission is difficult to understand because counsel for Plaintiff was also counsel for the plaintiffs in <u>Kwo Lee II</u> and <u>Fresh Trade</u> in which the court fully explained the legal landscape in sustaining Customs' enhanced bonding requirements. <u>See</u> <u>Kwo Lee II</u>, 39 CIT at ___, 70 F. Supp. 3d at 1374-80; <u>Fresh Trade</u>, 38 CIT at ___, 26 F. Supp. 3d at 1368-70. Rather than cite or discuss either of these decisions, Plaintiff elsewhere in its papers cites an interlocutory decision from the <u>Kwo Lee</u> litigation in which the court issued a preliminary injunction, <u>Kwo Lee</u>, 38 CIT at ___, 24 F. Supp. 3d at 1332. Plaintiff omits that the court ultimately ruled against the plaintiff there on the merits, upholding Customs' enhanced single transaction bond requirement. Armed with this hindsight, this Court now knows that the preliminary injunction in <u>Kwo Lee</u> was improvidently granted. <u>Cf.</u> <u>Yin Xin Int'l Trading Co. v. U.S. Bureau of Customs & Border Protection</u>, No. 13-00392, at 2-6 (Ct. Int'l Trade Dec. 23, 2013) (vacating TRO on an enhanced bonding requirement, explaining that "[a]fter reviewing Defendant's response, it is apparent that the court improvidently granted Plaintiff's Application for a TRO"). A full and fair presentment of the <u>Kwo Lee</u> litigation, omitted by Plaintiff in its papers, fosters skepticism that there is any merit in Plaintiff's case.

Without any argument from Plaintiff about the applicable law, the court briefly notes that pursuant to 19 U.S.C. § 1623 Customs promulgated 19 C.F.R. § 113.13(d), which expressly authorizes CBP to impose additional security equal to an importer's <u>potential</u> antidumping duty liability. 19 C.F.R. § 113.13(d) (2015); <u>Fresh Trade</u>, 38 CIT at ___, 26 F. Supp. 3d at 1363 (citing <u>Nat'l Fisheries Inst., Inc. v. U.S. Bureau of Customs & Border Prot.</u>, 33 CIT 1137, 1160, 637 F. Supp. 2d 1270, 1291 (2009)). It is apparent that

QTF may <u>potentially</u> be subject to the higher PRC-wide rate as a consequence of Commerce's preliminary determination in the 20th administrative review. Furthermore, there has been a long and documented pattern of non-payment and underpayment of antidumping duties subject to the <u>Garlic Order</u> (amounting to several hundred million dollars). <u>See</u> Pub. Decl. of Alexander Amdur ¶ 1-4 (Jan. 8 2016), ECF No. 20. Customs, here, has also provided confidential documents regarding Plaintiff's connection to other importers that mirror a pattern of non-payment and underpayment, which suggests, as Customs claims, that Plaintiff poses a similar risk to the revenue. <u>See</u> Conf. Decl. of David Shaw ¶¶ 7-16 (Jan. 8, 2016), ECF No. 21 (summarizing results of investigation into certain garlic importers included as other exhibits to Customs' response). In light of these facts, it is hard to see merit in Plaintiff's claim that Customs failed to provide an adequate explanation for the enhanced bonding requirement for Plaintiff's entries. Accordingly, Customs' imposition of a heightened bonding requirement on imports from QTF does not appear arbitrary or capricious. <u>See</u> <u>Kwo Lee II</u>, 39 CIT at ___, 70 F. Supp. 3d at 1375-76. Plaintiff has therefore failed to establish a likelihood of success on the merits.

## II. Irreparable Harm

Plaintiff alleges, through a single affidavit of a company manager, the inability to pay for enhanced bonding, mounting demurrage fees, and continued spoilage, as well as possible contract damages, loss of good will, and financial uncertainty. Pl.'s Mot. App'x 5 ¶¶ 16-21. Such harms may be irreparable. <u>See</u> <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974) ("[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities" are irreparable); <u>CPC Int'l, Inc. v. United States</u>, 19 CIT 978, 979, 896

F. Supp. 1240, 1243 (1995) (irreparable harm occurs where "compliance with a ruling of Customs . . . would cause the importer to incur costs, expenditures, business disruption or other financial losses, for which the importer has no legal redress to recover in court, even if the importer ultimately prevails on the merits in contesting the ruling."). At the same time, however, proffering a single affidavit from a manager "[w]ithout more, . . . may be considered 'weak evidence, unlikely to justify a preliminary injunction.'" Fresh Trade, 38 CIT at ___, 26 F. Supp. 3d at 1368 (quoting Shree Rama Enters. v. United States, 21 CIT 1165, 1167, 983 F. Supp. 192, 195 (1997)). This affidavit contains bald assertions without accompanying support. Plaintiff does not include any financial statements to prove lack of necessary capital reserves or any documents indicating that Plaintiff sought and was denied financing to meet its enhanced bonding obligations. See Shandong Huarong, 24 CIT at 1290-91, 122 F. Supp. 2d at 147 (citing Chilean Nitrate Corp. v. United States, 11 CIT 538, 541 (1987)). Plaintiff does not specify the timeframe for spoilage of the subject garlic entries, or provide any of the contracts that may be breached as a result. Other than Plaintiff's self-serving assertions, the record does not establish irreparable harm. See Fresh Garlic, 38 CIT at ___, 26 F. Supp. 3d at 1367-68.

### III. Balance of the Equities

The court "must balance the competing claims of injury and must consider the effect" that granting or denying relief will have on each party. Winter, 555 U.S. at 24. Here, Plaintiff alleges that denying a preliminary injunction will cause it additional demurrage fees, spoilage costs, and possibly will cause it contract damages, loss of good will, and financial uncertainty. Plaintiff alleges that obtaining a bond for importing merchandise

subject to the <u>Garlic Order</u> is expensive as compared to other industries. As explained above, however, Plaintiff fails to substantiate these allegations.

Customs, on the other hand, asserts that granting a preliminary injunction will threaten substantial economic injury in the form of lost revenue to the United States. <u>See</u> Def.'s Resp. at 29; 19 U.S.C. § 1623. As noted above, there has been a long and documented pattern of non-payment and underpayment of antidumping duties subject to the <u>Garlic Order</u> (amounting to several hundred million dollars). <u>See</u> Pub. Decl. of Alexander Amdur ¶ 1-4 (Jan. 8 2016), ECF No. 20. And again, Customs has experienced problems recovering antidumping duties under the <u>Garlic Order</u> from both importers and their sureties. <u>See, e.g.</u>, <u>United States v. Am. Home Assurance Co.</u>, 39 CIT ___, Slip Op. 15-141 (2015) (action seeking to collect unpaid antidumping duties on garlic, among other things, on bonds securing entries made between 2001 and 2002).

The court must add an additional consideration in the balancing of the equities. In this action the court has perceived a lack of candor on the part of counsel for Plaintiff. Despite representing the other plaintiffs in recent bond enhancement litigation, <u>Kwo Lee II</u>, 39 CIT at ___, 70 F. Supp. 3d at 1371; <u>Fresh Trade</u>, 38 CIT at ___, 26 F. Supp. 3d at 1364, counsel for Plaintiff in two conference calls and one hearing before the court maintained what the court believed was a feigned ignorance about the underlying facts behind Customs' decision to require the additional bonding for entries of garlic from the PRC. Counsel also failed to cite applicable precedent in which counsel was the attorney of record (<u>Kwo Lee II</u> and <u>Fresh Trade</u>). Understanding that one who seeks

equity must do equity, the court believes that the balance of the equities tips in favor of the Government.

### IV. Public Interest

The court "should pay particular regard for the public consequences" when "employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. Here, the public has an interest in protecting the revenue of the United States and in assuring compliance with the trade laws. See 19 U.S.C. § 1623. Enhanced bonding pending litigation serves both these interests. Additional security covers potential liabilities and protects against default, ensuring the correct antidumping duty is paid. Cf. Shandong Huarong, 24 CIT at 1286, 122 F. Supp. 2d at 1372 ("The public has an interest in ensuring the fair application of the antidumping laws while simultaneously guaranteeing foreign exporters will not default in the satisfaction of their import obligations.").

Plaintiff argues that a preliminary injunction serves the public interest because it ensures the "proper and equitable enforcement of the trade laws, ensuring the correct antidumping duties are collected." Pl.'s Mot. at 9. While the public interest is served by the accurate, effective, uniform, and fair enforcement of trade laws, Union Steel v. United States, 33 CIT 614, 622, 617 F. Supp. 2d 1373, 1381 (2009); Ceramica Regiomontana, S.A. v. United States, 7 CIT 390, 397, 590 F. Supp. 1260, 1265 (1984), the public interest is also served by protecting the revenue of the United States, 19 U.S.C. § 1623. Given the circumstances of this case, public interest tips in favor of the Government.

## Conclusion

Plaintiff has not demonstrated that it is entitled to a preliminary injunction.

Accordingly, Plaintiff's motion is denied.

/s/ Leo M. Gordon
Judge Leo M. Gordon

Dated:    February 11, 2016
          New York, New York