**Slip Op. 04-120**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

_____
                                               :
NSK LTD., NSK EUROPE LTD.,                      :
NSK BEARINGS EUROPE LTD.,                       :
NSK CORPORATION and NSK                         :
PRECISION AMERICA, INC.,                        :
                                               :
          Plaintiffs,                           :
                                               :
     v.                                         :
                                               :  Court No. 04-00413
UNITED STATES,                                  :
                                               :
          Defendant,                            :
                                               :
     and                                        :
                                               :
TIMKEN U.S. CORPORATION,                        :
                                               :
          Defendant-Intervenor.                 :
_____:

Pursuant to USCIT R. 65(a) and (b), NSK Ltd., NSK Europe Ltd., NSK Bearings Europe Ltd., NSK Corporation and NSK Precision America, Inc. (collectively, "NSK") request a preliminary injunction and temporary restraining order, respectively. NSK seeks to temporarily restrain and then enjoin the fifteenth administrative reviews of the antidumping duty order on ball bearings and parts thereof from Japan and the United Kingdom covering the period of May 1, 2003, through April 30, 2004. Defendants move for a dismissal pursuant to USCIT R. 12(b)(1) and 28 U.S.C. § 1581 (2000) for lack of subject matter jurisdiction. On September 15, 2004, the Court heard oral argument to determine whether a temporary restraining order and preliminary injunctive relief are appropriate.

**Held:** NSK's motion for a temporary restraining order and preliminary injunctive relief is denied because NSK has not sufficiently demonstrated that the elements required for such relief have been met. Defendant's motion for dismissal for lack of subject matter jurisdiction is granted.

Dated: September 20, 2004

Crowell & Moring LLP (Robert A. Lipstein, Matthew P. Jaffe, Alexander H. Schaefer) for NSK Ltd., NSK Europe Ltd., NSK Bearings Europe Ltd., NSK Corporation and NSK Precision America, Inc., plaintiffs.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; Commercial Litigation Branch, Civil Division, United States Department of Justice (Michael D. Panzera); of counsel: Peter Kirchgraber, Elizabeth Cooper Doyle, Philip Curtin, Arthur Sidney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for the United States, defendant.

Stewart and Stewart (Terence P. Stewart, Geert De Prest, Eric P. Salonen) for Timken U.S. Corporation, defendant-internevor.

## OPINION

**TSOUCALAS, Senior Judge**: Pursuant to USCIT R. 65(a) and (b), NSK Ltd., NSK Europe Ltd., NSK Bearings Europe Ltd., NSK Corporation and NSK Precision America, Inc. (collectively, "NSK") request a preliminary injunction and temporary restraining order, respectively. NSK seeks to temporarily restrain and then enjoin the fifteenth administrative reviews of the antidumping duty order on ball bearings and parts thereof from Japan and the United Kingdom covering the period of May 1, 2003, through April 30, 2004. Defendants move for a dismissal pursuant to USCIT R. 12(b)(1) and 28 U.S.C. § 1581 (2000) for lack of subject matter jurisdiction. On September 15, 2004, the Court heard oral argument to determine whether a temporary restraining order and preliminary injunctive relief are appropriate.

## Background

On May 15, 1989, Commerce published antidumping duty orders covering anti-friction bearings (other than tapered roller bearings) and parts thereof ("AFBs") from various countries, including Japan and the United Kingdom. Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings, and Parts Thereof From Japan, 54 Fed. Reg. 20,904 (May 15, 1989). NSK's complaint concerns the fifteenth administrative reviews of those orders which began on June 30, 2004, and cover the period of May 1, 2003 through April 30, 2004. See Compl. ¶ 15. During the first administrative reviews of AFBs, Commerce implemented a bearing-family averaging methodology (the "Family Approach") for model matching. See Final Results of Antidumping Duty Administrative Reviews for Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et. al., 57 Fed. Reg. 28,360, 28,364-65 (June 24, 1992). Under this approach, similar merchandise is matched based on eight criteria including model design, physical dimension and precision rating. See Mem. Supp. Mot. T.R.O. Prelim. Inj. ("NSK's Mem.") at 2.

During the second and third administrative reviews, The Torrington Company challenged this model matching approach. See id. at 2. The Court, however, upheld Commerce's use of the Family Approach. See Torrington Co. v. United States, 19 CIT 403, 412-14,

881 F. Supp. 622, 633-35 (1995). During the fourteenth administrative reviews for AFBs, Commerce was asked by the Timken U.S. Corporation ("Timken") to change its Family Approach in favor of a new model matching methodology. See App. Mem. Supp. Mot. T.R.O. Prelim. Inj. ("NSK's App.") Ex. 18. Commerce, however, declined to change its model matching methodology for the fourteenth review stating that it did not have conclusive evidence that changes to its model matching methodology would yield more accurate results. See id., Ex. 20 at 3. Commerce remarked that the "suggested changes, or a variant thereof, [to its methodology] might yield more accurate results," but recommended that it first analyze the issue further. Id.

On December 3, 2003, Commerce determined that a change to its model match methodology for AFBs was warranted. See id., Ex. 21 at 2-5. Commerce notes that the Family Approach considers all models within a family to be equally similar. See id. at 3. This methodology deviates from its normal practice of searching the home market sales of subject merchandise for the single most similar model that can be compared. See id. at 3-4. Commerce determined that technological changes since the implementation of the Family Approach have lifted the time and cost restraints on the number of matches Commerce can make on an individual basis. See id. Based on these reasons, Commerce determined that it would "re-examine the

model-matching methodology [it] use[s] in administrative reviews of these antidumping duty orders with a view to revising the methodology in a manner commensurate with the current level of technology." Id. at 4. Commerce determined that it lacked sufficient time to implement any changes and, therefore, used the Family Approach for the fourteenth review of AFBs. See id. at 5. Commerce stated that it would solicit comments and rebuttal comments "on all the physical characteristics and their importance in order to develop an accurate and precise model-match methodology in which [Commerce] would select the single most similar model based on all relevant physical characteristics." Id. at 7. On February 2, 2004, and February 17, 2004, NSK filed comments and rebuttal comments, respectively, about model matching criteria with Commerce. See NSK's Mem. at 5.

On June 30, 2004, Commerce initiated the fifteenth administrative reviews of the antidumping duty orders covering ball bearings and parts thereof from Japan and the United Kingdom. See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 69 Fed. Reg. 39,409 (June 30, 2004). On July 2, 2004, Commerce issued a memorandum discussing the rationale for its determination to reassess its model match methodology for the fifteenth administrative reviews. See NSK's App. Ex. 24. Commerce stated its intention to use the

revised model matching methodology, but also indicated that it may alter the methodologies depending on comments received or data collected during the fifteenth administrative reviews. See id. at 1. On July 7, 2004, Commerce issued questionnaires to all respondents, including NSK. See NSK's Mem. at 5. On August 23, 2004, NSK filed this action requesting a temporary restraining order and a preliminary injunction suspending the fifteenth administrative reviews during the pendency of this action. Commerce thereafter filed a motion to dismiss for lack of subject matter jurisdiction.

**DISCUSSION**

**I.   NSK Has Failed to Meet the Requirements for the Issuance of a Temporary Restraining Order and Preliminary Injunction**

Injunctive relief is an "extraordinary remedy," which is to be granted sparingly. Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982). In order to obtain a preliminary injunction, NSK bears the burden of demonstrating that (1) it has a likelihood of success on the merits; (2) absent relief, there is a threat of immediate and irreparable harm to NSK; (3) the balance of hardships to the parties favors issuance of the preliminary injunction; and, (4) the public interest would be better served by a grant of the relief requested. See Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1555 (Fed. Cir. 1994); see also Zenith Radio Corp. v. United

States, 710 F.2d 806, 809 (Fed. Cir. 1983). In analyzing these factors, the Court employs a "sliding scale," see Chilean Nitrate Corp. v. United States, 11 CIT 538, 539 (CIT 1987), and is not required to assign equal weight to each factor. See FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). After considering the requisite factors, the Court finds that NSK has failed to demonstrate that it is entitled to the requested relief.

### A.    Likelihood of Success on the Merits

NSK argues that Commerce's new model match methodology and its retroactive application of this methodology to the fifteenth administrative reviews of AFBs is unlawful. See NSK's Mem. at 12-26. Specifically, NSK complains that it detrimentally relied on Commerce's Family Approach and that Commerce's explanation for changing methodologies is not supported by substantial evidence and in accordance with law. See id. at 12-20. The Court agrees with NSK that Commerce may not alter its methodology which has been relied upon by a respondent without explaining the basis for the change and demonstrating that such change is supported by substantial evidence and in accordance with law. See NSK's Mem. at 12; see also Ashan Iron & Steel Co., Ltd v. United States, 2003 Ct. Intl. Trade LEXIS 109, *19-20 (CIT July 16, 2003). An agency, however, is provided ample latitude to adopt new rules and policies depending on the circumstances that arise. See Rust v. Sullivan,

500 U.S. 173, 186-87 (1991).

Agency statements provide guidance to regulated industries. "'An [agency] announcement stating a change in the method . . . is not a general statement of policy.'" American Trucking Ass'ns, Inc. v. ICC, 659 F.2d 452, 464 n.49 (5th Cir. 1981) (quoting Brown Express, Inc. v. United States, 607 F.2d 695, 701 (5th Cir. 1979) (internal quotations omitted)). While a policy denotes "the general principles by which a government is guided" by laws, BLACK'S LAW DICTIONARY 1178 (7th ed. 1999) (emphasis added), methodology refers only to the "mode of organizing, operating or performing something, especially to achieve [the goal of a statute]." Id. at 1005 (defining mode) (emphasis added). Accord Avoyelles Sportsmen's League, Inc. v. Marsh, 715 F.2d 897 (5th Cir. 1983); Interstate Natural Gas Ass'n of Am. v. Federal Energy Regulatory Comm'n, 716 F.2d 1 (D.C. Cir. 1983); Hooker Chems. & Plastics Corp. v. Train, 537 F.2d 620 (2d Cir. 1976). Consequently, the courts are even less in the position to question an agency action if the action at issue is a choice of methodology, rather than policy. See, e.g., Maier, P.E. v. United States Envtl. Prot. Agency, 114 F.3d 1032, 1043 (10th Cir. 1997) (citing Professional Drivers Council v. Bureau of Motor Carrier Safety, 706 F.2d 1216, 1221 (D.C. Cir. 1983)). Similarly, an agency decision to change its methodology, that is, to take an act of statutory implementation

while pursuing the same policy, should be examined under the Chevron test and sustained if the new methodology is reasonable. See, e.g., Koyo Seiko Co. v. United States, 24 CIT 364, 373-74, 110 F. Supp. 2d 934, 942 (2000) (stating that "'the use of different methods [of] calculati[on] . . . does not [mean there is a] conflict with the statute'") (quoting Torrington Co. v. United States, 44 F.3d 1572, 1578 (Fed. Cir. 1995)).

In the case at bar, NSK has failed to demonstrate that it will succeed on the merits. While Commerce has indicated its intention to abandon the Family Approach and adopt a new model match method, see NSK's App. Ex. 21 at 5-7, Commerce has not made its final determination as to what methodology it will use in the fifteenth administrative reviews.[1] In addition, Commerce has only begun collecting data to aid in determining what methodology will be used. Furthermore, Commerce is not precluded from considering a change in its methodology in a continuing review. Prior to the implementation of its decision to change a methodology, Commerce is required to provide the parties affected by the change a final opportunity to comment before the final determination is issued.

---

[1] NSK argues that Commerce has made such a final determination by not requesting Family Approach data in its questionnaires sent to interested parties in July 2004. See NSK's Reply Mem. Supp. Mot. T.R.O. Prelim. Inj. at 3. The Court notes, however, that while questionnaires may be indicative of Commerce's intentions, they lack the authority and decisiveness of a final determination.

See 19 U.S.C § 1677m(g) (2000). Here, Commerce has not given interested parties an opportunity to comment on the proposed methodology nor has Commerce issued a final determination. The lack of a final determination and evidentiary record precludes a determination as to whether Commerce's new methodology, if indeed it adopts this new methodology, is reasonable. Accordingly, the Court finds that NSK has failed to carry its burden and demonstrate that it is likely to succeed on the merits.

### B.    Immediate and Irreparable Harm

NSK asserts that it will face immediate and irreparable harm if injunctive relief is not granted. See NSK's Mem. at 26-31. Specifically, NSK maintains that it will not be able to apply its safe pricing system because "Commerce's model match methodology lies at the very heart of this system." Id. at 26. Consequently, NSK asserts that without the requested relief it will lose its right to purge itself of antidumping duty liabilities. See id. at 26-28. NSK's inability to apply a safe pricing system "is not a mere economic injury, but rather the loss of its right to obtain effective judicial review of Commerce's wrongful act so it can rid itself of antidumping liabilities." Id. at 27. NSK notes that it may withdraw from the fifteen administrative reviews of AFBs on or before September 28, 2004. See id. at 29. NSK contends that if it withdraws from the reviews it will lose its "right to judicial

review of Commerce's unlawful abandonment of the [F]amily [A]pproach." Id. at 30. NSK maintains that without the requested relief it will incur costs related with complying with Commerce's new methodology. See id. at 31. NSK asserts that the costs of "complying with Commerce's illicit retroactive application of its new model-match methodology to the AFB15 reviews are significant," id., because NSK is unable to price its AFBs "safely." See NSK's App. Ex. 26 ¶¶ 21, 22, 23.

To establish irreparable harm, NSK bears an extremely heavy burden because the harm must be the type of injury that is serious and cannot be undone. See Shandong Huarong Gen. Group Corp. v. United States, 24 CIT 1286, 1289-90, 122 F. Supp.2d 1367, 1369-70 (2000). NSK must show a presently existing threat and not just the mere possibility of injury. See id. Here, NSK has failed to sufficiently demonstrate that it will be irreparably harmed without a preliminary injunction. NSK asserts that without injunctive relief "it will invariably lose sales that cannot be regained; customers that cannot be recaptured; and profits that cannot be recovered." See NSK's Mem. at 27. The Court has held that "the harm [that] is irreparable cannot be determined by surmise." Elkem Metals Co. v. United States, 25 CIT 186, 192, 135 F. Supp. 2d 1324, 1331 (2001). NSK's allegations are speculative because Commerce has not rendered a final determination as to which methodology will

be used for the final results.  Commerce has neither accepted or rejected with finality the use of a new model match methodology. Accordingly, the Court finds that NSK has failed to demonstrate that it will be irreparably harmed if injunctive relief is denied.

Because the Court finds that NSK has failed to demonstrate that it will succeed on the merits and that it will face immediate irreparable harm, it is not necessary to examine the remaining two factors in depth.  See FMC Corp., 3 F.3d at 427 (stating that "[t]he absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial" of a preliminary injunction). NSK asserts that injunctive relief would serve the public interest by ensuring the fair and accurate administration of the antidumping duty statute and preserving NSK's right to judicial review.  See NSK's Mem. at 32-33.  NSK also argues that the balance of hardship warrants the granting of injunctive relief and "would best preserve the Court's power to decide this case and award an effective remedy, without imposing an excessive burden on Commerce."  Id. at 34.  The Court finds that neither the public interest nor the balance of hardship weigh in favor of granting a preliminary injunction.  NSK may seek meaningful judicial review  when Commerce has issued its final determination.  At this juncture in the proceeding, Commerce has just begun to collect data and formulate

its model matching methodology.  The Court agrees with Timken that "NSK's interlocutory action to stop Commerce from doing what the law requires it to do merely delays the final results, and delays any potential for judicial review based on the complete record." Timken U.S. Corp. Mem. Opp'n NSK's Mot. Injunctive Relief at 24. Accordingly, the Court denies NSK's motion for a temporary restraining order and preliminary injunction.

**II.  NSK Has Failed to Demonstrate that the Court has Jurisdiction Under 28 U.S.C. § 1581(i)**

In the case at bar, the Court notes that NSK's time to file a response to Commerce's motion pursuant to USCIT R. 12(b)(1)  does not expire until October 4, 2004.  At oral arguments held on September 15, 2004, however, the parties addressed whether the Court has jurisdiction under 28 U.S.C. § 1581(i).  Based on the arguments put forth by the parties during this hearing, the Court is unpersuaded by NSK's argument that jurisdiction exists.  In matters involving the antidumping duty laws, the Court has jurisdiction under 28 U.S.C. § 1581(c).  Under certain circumstances, however, 28 U.S.C. § 1581(i), the residual jurisdiction provision, confers exclusive jurisdiction upon the Court concerning issues relating to the antidumping duty law which are not specifically covered by other subparagraphs of section

1581.[2] The residual jurisdiction provision may also be invoked when the remedy provided by another subsection would be "manifestly inadequate." See Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987), cert. denied, 484 U.S. 1041 (1988); accord Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992). To invoke jurisdiction under 28 U.S.C. § 1581(i), the plaintiff bears "the burden of proving the requisite jurisdictional facts to establish the court's jurisdiction." Elkem Metals Co. v. United States, 23 CIT 170, 175, 44 F. Supp. 2d 288, 292 (1999). The Court finds that NSK has failed to demonstrate that the residual jurisdiction provision applies in this case.

NSK argues that jurisdiction under 28 U.S.C. § 1581(c) is "manifestly inadequate with respect to this matter." NSK's Mem. at 9. NSK asserts that this matter is ripe for judicial review because it "has already tried in the context of the AFB15 reviews to convince Commerce to keep the [F]amily [A]pproach," and Commerce

_____

[2] The statute states in pertinent part that "[t]his subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 . . . ." 28 U.S.C. § 1581(i). Section 516A(a) of the Tariff Act of 1930 provides that within 30 days after the date of publication in the Federal Register of the final results of an administrative review conducted by Commerce, a party to the proceeding "may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint . . . contesting any factual findings or legal conclusions upon which the determination is based." 19 U.S.C. § 1516a(a)(2)(A) (2000).

has rejected NSK's arguments.  Id. at 10.  NSK maintains that without immediate judicial relief it will sustain irreparable injuries and, therefore, relief afforded under 28 U.S.C. § 1581(c) is manifestly inadequate.  See id. at 10-11.  NSK argues that Commerce has collected comments with respect to the fifteenth administrative reviews and the appropriate model matching methodology.  See id. at 10.  NSK also contends that Commerce has made its final determination to not use the Family Approach and any attempt by NSK to get Commerce to change its position would be futile.  See id.  Commerce, however, has not issued its final determination.  In essence, NSK requests the Court to exercise jurisdiction to decide an issue that involves interim decision-making by Commerce.

The Court's jurisdiction involving such decisions by Commerce, however, is not broad.  See MacMillan Bloedel Ltd. v. United States, 16 CIT 331, 332-33 (1992).  In the instances where residual jurisdiction has been found for interim decisions, jurisdiction was invoked because plaintiffs would have been denied relief if required to wait for Commerce's final determination prior to seeking judicial review.  See id. (discussing several instances in which the Court has found jurisdiction for interim decisions).  Here, if required to await Commerce's final determination, NSK will not be denied adequate relief.  Furthermore, contrary to NSK's

contention, judicial relief under 28 U.S.C. 1581(c) is adequate. The Court's failure to grant relief at this stage in the proceeding will not preclude NSK from attaining future judicial relief. In certain instances the Court has found jurisdiction under 28 U.S.C. § 1581(i) because "Commerce has decided [an] issue with finality and is continuing to do the very thing which causes the allegedly irreparable injury." Techsnabexport, Ltd. v. United States, 16 CIT 420, 425, 795 F. Supp. 428, 435 (1992). Here, Commerce has not determined which methodology it will use for its final results. Once Commerce issues its final determination, NSK will have a basis for relief from Commerce's decision and the procedural steps taken to arrive at such a determination. As the Court has already noted, Commerce has not definitively decided to use a different model match methodology than the Family Approach, or if it does, what the new methodology will entail. Rather, Commerce has determined to reassess the methodology that it has employed during previous administrative reviews.

Here, NSK seeks to sidestep the administrative process and obtain judicial review prior to the issuance of a final determination by Commerce. In the review of antidumping duties, "to allow a party to elect to proceed under section 1581(i), without having first availed himself of the remedy provided under section 1581(c), would undermine the integrity of the clear path

Congress intended the claimant to follow." <u>JMC, Ltd. v. United States</u>, 210 F.3d 1357, 1359 (Fed. Cir. 2000). The Court finds that NSK has failed to demonstrate that jurisdiction under 28 U.S.C. § 1581(c) is manifestly inadequate and that the Court should invoke residual jurisdiction under 28 U.S.C. § 1581(i) to provide judicial relief for an interim decision-making matter. Accordingly, the Court grants Commerce's motion to dismiss this action for lack of subject matter jurisdiction.


## CONCLUSION

The Court finds that NSK has failed to meet its burden of demonstrating the need for a temporary restraining order and preliminary injunction. Of the four factors considered for the issuing of injunctive relief, NSK has failed to demonstrate the need for the Court to intervene in Commerce's administrative process. Furthermore, NSK has failed to demonstrate that jurisdiction under 28 U.S.C. § 1581(c) is manifestly inadequate and that the Court has jurisdiction under 28 U.S.C. § 1581(i). The Court will enter judgment accordingly.


     /s/ Nicholas Tsoucalas
**NICHOLAS TSOUCALAS**
**SENIOR JUDGE**

Dated:    September 20, 2004
          New York, New York