Slip Op. 06-5

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                               :
INTERNATIONAL CUSTOM           :
PRODUCTS, INC.,                :
                               :
          Plaintiff,           :
                               : Before: Richard K. Eaton, Judge
                               :
     v.                        :
                               : Court No. 05-00615
                               : Public Version
UNITED STATES OF AMERICA,      :
                               :
          Defendant.           :
_____:
```

MEMORANDUM OPINION

[Plaintiff's motion for a preliminary injunction denied]

Dated: January 11, 2006

*Mayer, Brown, Rowe & Maw, LLP* (*Andrew A. Nicely* and *Simeon Munchick Kriesberg*), for plaintiff.

*Peter D. Keisler*, Assistant Attorney General, Civil Division, United States Department of Justice; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Edward F. Kenny*); *Barbara S. Williams*, Attorney-in-Charge, International Trade Field Office, of counsel, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection,(*Yelena Slepak*), for defendant.

Eaton, Judge: This matter is before the court on the motion for a preliminary injunction of plaintiff International Custom Products, Inc. ("plaintiff" or "ICP"), and the opposition thereto of defendant the United States ("defendant" or the

"Government").[1]  For the reasons set forth below, the court denies plaintiff's motion.


## BACKGROUND

Plaintiff is an importer and supplier of a milk-fat based white sauce product used as an ingredient in sauces, salad dressings, and other food products.  On January 20, 1999, the United States Customs Service (now the Bureau of Customs and Border Protection) issued New York ruling letter D86228 ("Ruling Letter"), which classified the white sauce under the Harmonized Tariff Schedule of the United States ("HTSUS") 2103.90.9060 (later numbered 2103.90.9091) as "[s]auces and preparations therefor."  Pl.'s Conf. Mem. of Points and Authorities in Supp. of Pl.'s App. for a Temporary Restraining Order and Mot. for a Prelim. Injunction ("Pl.'s Mem.") at 4.  The current duty rate under HTSUS 2103.90.9091 is 6.4% *ad valorem*.  *Id*.

On August 24, 2005, Customs published a Proposed Revocation of Ruling Letter [D86228] and Revocation of Treatment Relating to

---

[1]     In addition to opposing plaintiff's motion for a preliminary injunction, defendant moves to dismiss based on lack of subject matter jurisdiction.  Because the court will order more complete briefing on this issue, it declines to rule on the motion to dismiss here.  *See U.S. Ass'n of Importers of Textiles and Apparel v. United States Dep't of Commerce*, 413 F.3d 1344, 1348 (Fed. Cir. 2005) ("We see no abuse of discretion in the trial court's decision to delay consideration of the government's motion to dismiss until briefing was completed.").

the Tariff Classification of White Sauce ("Proposed Revocation").

*See* 39 Cust. Bull. & Dec. 35 (Aug. 24, 2005).[2]  By publication of

the Proposed Revocation, Customs gave notice that it was

commencing an administrative procedure to reclassify ICP's

merchandise.  ICP timely submitted comments disputing Customs'

proposed classification on both technical and legal grounds*.  See*

Comments of ICP on Proposed Revocation (Sept. 23, 2005), Conf. R.

Annex B.


On November 2, 2005, following completion of its

administrative procedure, Customs issued HQ 967780 (the

"Revocation"), which revoked ICP's Ruling Letter.  The Revocation

reclassified ICP's white sauce as a "dairy spread" under HTSUS

0405.20.3000, which is subject to a duty of $1.996 per kilogram,

plus safeguard duties of $0.149 per kilogram.  Customs' new

classification has the effect of greatly increasing the duty on

---

[2]     Prior to this motion for a preliminary injunction, there has been substantial litigation in this case.  *See Int'l Custom Prods., Inc. v. United States*, 29 CIT __, __, 374 F. Supp. 2d 1311 (2005) (holding Customs' notice of action reclassifying ICP's white sauce to be null and void); *Int'l Custom Prods., Inc. v. United States*, 29 CIT __, __, slip op. 05-117 (Sept. 1, 2005) (not published in the Federal Supplement) (granting ICP's request for expedited briefing while holding that Customs did not violate a previous Court order by imposing continuous-entry bonds on ICP's white sauce); *Int'l Custom Prods., Inc. v. United States*, 29 CIT __, __, slip op. 05-145 (Nov. 8, 2005) (not published in the Federal Supplement) (finding ICP's claim concerning unlawful imposition of single-entry bonds on future entries to be moot and lacking a justiciable issue).

plaintiff's merchandise.[3]  Upon publication of the Revocation,

plaintiff filed the complaint in this action, in which, among

other things, it asks the court to "enjoin[] [the Revocation]

from taking effect during the pendency of this action and further

enjoin[] Customs from classifying or liquidating ICP's white

sauce in a manner inconsistent with [the Ruling Letter] during

the pendency of this action."  Compl. of 11/14/05 at 21.  Should

an injunction be issued, plaintiff's merchandise entered prior to

a final judicial determination would be liquidated[4] at the duty

determined by the ultimate outcome.  Should the injunction not

issue, during the pendency of this action plaintiff could be

required to pay or deposit the increased duty on its entries.

Should plaintiff ultimately prevail, by protesting the

liquidation it would receive a refund of the duties paid or

deposited, plus interest.  *See* 19 C.F.R. § 159.51 (2005)

("Liquidation of entries shall not be suspended simply because

---

[3]     The new rate amounts to an approximate 2400 percent
increase from roughly [[        ]] per kilogram, the rate applied
in accordance with the Ruling Letter.  The [[       ]] figure is
the result of calculating the rate as to volume so that it might
be compared to HTSUS 0405.20.3000, which is calculated on volume.
*See* Conf. R. Annex A, Ex. 6.

[4]     Liquidation is the "final computation or ascertainment
of the duties . . . or drawback accruing on an entry."  19 C.F.R.
§ 159.1 (2005); *see also Ammex, Inc. v. United States*, 419 F.3d
1342, 1345 n.1 (Fed. Cir. 2005).

issues involved therein may be before the Customs Court[5] in

pending litigation, since the importer may seek relief by

protesting the entries after liquidation."). With respect to the

relief requested in the underlying action, plaintiff asks that

the Revocation be declared unlawful.[6] Plaintiff claims 28 U.S.C.

---

[5]    Prior to 1980, this Court was called the Customs Court. The Customs Court Act of 1980 changed not only the name of the Court to the United States Court of International Trade, but also altered its powers. *See* Customs Court Act of 1980, Pub. L. No. 96-417, 94 Stat. 1728.

[6]    Plaintiff styles its request for relief as a

> request[] that the Court issue a preliminary injunction enjoining [the Revocation] from taking effect during the pendency of this action and further enjoining Customs from classifying or liquidating ICP's white sauce in a manner inconsistent with [the Ruling Letter] during the pendency of this action; and . . . that this Court enter judgment:
>
> > (1)  declaring unlawful and setting aside [the Revocation];
> >
> > (2)  ordering Defendant not to enforce [the Revocation];
> >
> > (3)  declaring that ICP's white sauce is properly classified under HTSUS 2103.90.9091;
> >
> > (4)  ordering that [the Ruling Letter] shall remain in effect;
> >
> > (5)  enjoining Defendant from taking any actions with respect to ICP's imports that are inconsistent with [the Ruling Letter];
> >
> > (6)  ordering Defendant to provide ICP

(continued...)

§ 1581(i)(4) as the basis of jurisdiction. Pl.'s Conf. Mem. of Points and Authorities in Supp. of Pl.'s Mot. for a Prelim. Injunction ("Pl.'s Mot.") at 6. While the validity of this jurisdictional claim is not without doubt, *see infra* Part IV (relating to likelihood of success on the merits), "it is not imperative that this court conclusively determine jurisdiction over an action as a predicate to ruling on the merits of such threshold equitable relief." *Ugine & Alz Belg., N.V. v. United States*, 29 CIT __, __, slip op. 05-113 at 5-6 (Aug. 29, 2005) (not published in the Federal Supplement). For the reasons set forth below, the court denies plaintiff's motion.

## DISCUSSION

To obtain the extraordinary relief[7] of an injunction prior

---

[6](...continued)

with an additional 5 months to import from the effective date of the Revocation if the Revocation is upheld by this Court;

(7) ordering Defendant to pay ICP the reasonable attorney fees, expenses, and court costs incurred by ICP and as to which it is entitled under the Equal Access to Justice Act; and

(8) awarding ICP such other and further relief as the Court deems appropriate.

Compl. of 11/14/05 at 21-22.

[7]    This Court recognizes that "[a] preliminary injunction
                                                    (continued...)

to trial, the movant bears the burden of establishing that: (1) it will suffer irreparable harm if preliminary relief is not granted; (2) the public interest would be better served by the relief requested; (3) the balance of the hardships tips in the movant's favor; and (4) the movant is likely to succeed on the merits at trial. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)).  In its analysis, the Court need not assign equal weight to each factor.  Rather, the "crucial factor [in granting a preliminary injunction] is irreparable injury."  *Corus Group PLC v. Bush*, 26 CIT 937, 942, 217 F. Supp. 2d 1347, 1354 (2002) (citing *Elkem Metals Co. v. United States*, 25 CIT 186, 190, 135 F. Supp. 2d 1324, 1329 (2001)).  The court will address each part of the test in turn.

I.   Irreparable Harm

In support of its motion, plaintiff has submitted the affidavits of (1) Dennis V. Raybuck, president and founder of ICP of DuBois, Pennsylvania ("Raybuck Declaration" or "Raybuck Decl."); (2) the president and chief operating officer[8] of what

---

[7](...continued)
is extraordinary relief that is available only on a special showing of need for relief *pendente lite* . . . ."  *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1339 (Fed. Cir. 2005).

[8]     [[                          ]], the president and chief
(continued...)

ICP refers to as "Supplier A" for purposes of confidentiality;

and (3) Gregory L. Wade, the global Chief Technical Officer of

MolsonCoors Brewing Company in Montreal, Quebec and Denver,

Colorado ("Wade Decl.").  *See* Conf. R. Annex A, Exs. 2,[9] 5; Conf.

R. Annex B, Ex. 6.[10]  Plaintiff relies primarily on the Raybuck

Declaration to establish that, in the absence of a preliminary

injunction, ICP will suffer irreparable harm. Irreparable injury

or harm is harm "which cannot receive reasonable redress in a

court of law." *Connor II v. United States*, 24 CIT 195, 197

(2000) (not reported in the Federal Supplement) (internal

quotation marks omitted) (internal citations omitted); *see also*

*Zenith Radio*, 710 F.2d at 809.

---

[8](...continued)
operating officer of [[
          ]], the U.S. subsidiary of [[
              ]].  Conf. R. Annex A, Ex. 5.

[9]      ICP has submitted two different versions of the Raybuck
Declaration.  *See* Conf. R. Annex A, Ex. 2; Conf. R. Annex B, Ex.
5.  The two documents contain the same information up to and
including paragraph 22; however the document in Annex B stops at
that paragraph, while the document in Annex A continues through
paragraph 40.  For purposes of this opinion, the court's
citations are to the Annex A declaration.

[10]      ICP has also proffered affidavits of Bernard D.
Liberati, ICP's customs broker, and John F. Michel, the president
and senior underwriter of Trade Risk Guaranty, Inc., the company
that issues ICP its customs bonds.  *See* Conf. R. Annex A, Exs. 3,
4.  While these affidavits are not relevant to the instant
motion, they may be relevant to the underlying action.

ICP's primary claim[11] is that its importation business cannot survive if Customs is permitted to revoke its Ruling Letter and reclassify the white sauce as a dairy spread. *See* Pl.'s Mot. at 13.  As ICP explains, "[t]he new classification would subject ICP's imports to prohibitively high tariffs, increasing the applicable duty rates by over 2400 percent.  ICP cannot afford to remain in business with such exorbitant costs." *Id*.;[12] *see also* Conf. R. Annex A, Ex. 10.

---

[11]     Plaintiff makes several other arguments concerning injury it claims will be suffered, in the absence of an injunction, by (1) a related company's manufacturing plant, *see* Raybuck Decl. ¶ 1 at 1, and (2) an unrelated purchaser of its merchandise, *see id*. ¶ 26 at 10.  Because neither of these corporate entities is a party to this action, these arguments cannot be heard as proof of the irreparable harm facing ICP. *See Heartland By-Products, Inc. v. United States*, 23 CIT 754, 760, 74 F. Supp. 2d 1324, 1331 (1999), *rev'd on other grounds,* 264 F.3d 1126 (Fed. Cir. 2001) (holding that a party cannot demonstrate the presence or absence of irreparable harm "based on the potential financial abilities of a nonparty.").

[12]     ICP claims that

> Just on the entries of white sauce that ICP is scheduled to make between October 1, 2005 and September 30, 2006 to meet its purchase and supply contracts for the fiscal year, the increased duties required by the Revocation equate to over [[                ]].  In contrast, ICP's entire net income during each of the last three fiscal years prior to 2005 was only about [[                ]].  In other words, the new duties for one year would amount to over [[                ]] ICP's net income for the year.

Pl.'s Mot. at 13; *see also* Conf. R. Annex A, Ex. 10.

ICP further argues that it will lose the goodwill of its largest supplier, Supplier A, if an injunction is not issued, since ICP will not be able to purchase the amount[13] of white sauce that it is contractually obligated to purchase.  Pl.'s Mot. at 15.  Indeed, ICP's president asserts that the company is "in serious danger of losing the goodwill of both [its largest customer,[14] which ICP refers to as "Customer A" for purposes of confidentiality], and Supplier A," resulting in "significant damage to [its] reputation in the industry."  Raybuck Decl. ¶ 27 at 10-11. Thus, absent an injunction, ICP insists that it will suffer irreparable harm to its relationships with both its supplier and customer.  *Id*. at 11.

Finally, ICP maintains that if Customs is not immediately enjoined from revoking the Ruling Letter, ICP will face substantial business uncertainty.  Specifically, "[u]ntil [ICP] can be certain that [its] white sauce will be able to enter under the advance ruling, [ICP] [is] unable to give Supplier A the advance notice that it requires to accommodate ICP within its production cycle."  Raybuck Decl. ¶ 24 at 9.  ICP explains:

> Supplier A has an eight-month production cycle.
> Supplier A begins its production of white sauce and

---

[13]    ICP claims that this amount is [[            ]] pounds. *See* Raybuck Decl. ¶ 23 at 9.

[14]    [[                                        ]].  *See id*. ¶ 26 at 10.

other products in early August of each year, and it requires two months to plan the capacity of its plants for production during that annual period. The lead time needed by Supplier A means that ICP has already lost any potential supply of white sauce for the first six months of Supplier A's eight month production cycle, and it may lose another month during the course of this litigation.

Pl.'s Mot. at 19-20.[15]


Defendant first contends that any irreparable harm to ICP is self-created.

On November 10, 2005, [lawyers for Customs] notified ICP . . . that jurisdiction was not proper under 28 U.S.C. § 1581(i), as jurisdiction appeared manifestly adequate under 28 U.S.C. § 1581(a), and under 28 U.S.C. § 1581(h). . . . [Defendant] offered to work out an expedited schedule under those jurisdictional bases which would provide ICP with a very rapid resolution of its action. . . . [Defendant] informed ICP [that] [it] would be happy to work with ICP to obtain a denied protest within hours after the effective date of the ruling revocation. . . . [T]he parties could agree that ICP would bring in a test shipment of its dairy spread on January 2, 2006. The dairy spread would be liquidated that day . . . with ICP filing a protest on the day of liquidation. In addition, the protest would be denied immediately, so ICP would have the ability to timely commence an action under 28 U.S.C. § 1581(a) within a day or two of January 2, 2006.

Def.'s Mem. in Resp. to Pl.'s App. for Prelim. Injunction and in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 7, 10-11 (footnote omitted). Despite this offer, defendant maintains that ICP "knowingly chose a course of action which involved significant jurisdictional problems . . . ." *Id.* at 20.

---

[15]   *See also* [[               ]] Decl. ¶¶ 6, 7 at 2.

Next, defendant argues that, even if ICP were to obtain a preliminary injunction, it would not provide ICP with any protection against alleged irreparable harm.  Defendant explains:

> ICP is seeking a preliminary injunction preventing Customs from liquidating its entries as dairy spread (as opposed to seeking an injunction affirmatively requiring the liquidation of entries as a sauce preparation).  However, the injunction styled by ICP would **not** provide it with **any** financial protection.  As noted previously, ICP claimed its alleged financial harm arose from the uncertainty about the validity of [the Revocation].  Here, even if ICP were granted the preliminary injunction it seeks, and Customs were prevented from liquidating its entries as dairy spread during the pendency of the injunction, ICP would have **no** financial certainty because **if the Government prevails in this action, Customs will – properly – liquidate all of these entries subject to the preliminary injunction as dairy spread**.

Def.'s Mem. at 17 (emphasis in original).  In other words, defendant argues that, should it prevail on the merits, Customs will liquidate all of the entries at the higher duty required of dairy spread.  Thus, according to defendant, an injunction will remove none of the uncertainty as to the validity of the Ruling Letter because this uncertainty will only end at the conclusion of the underlying litigation.

More fundamentally, defendant argues that the evidence proffered by ICP is insufficient to establish irreparable harm. First, defendant asserts that a substitute domestic supply of white sauce is available to ICP, and that ICP's own witness bears

this out.   Defendant states:

> ICP's own expert Gregory L. Wade, in his declaration
> dated September 22, 2005, submitted as part of ICP's
> supporting documents, stated at paragraph 13:
>
>> Dozens of manufacturers and refiners in the
>> United States have the capacity to deliver
>> fat preparations of almost infinite variety,
>> using fat sources singly or in combination.
>> These companies['].  .  . principal mode of
>> selling their products is through an employed
>> sales force or sales agents that visit the
>> sauce and dressing manufacturers and
>> demonstrate how their fat preparation
>> specifications meet the manufacturers' need.

Def.'s Mem. at 21 (emphasis omitted); Wade Decl. ¶ 13 at 5.


In addition, defendant insists that ICP has failed to
document any of its present or prospective lost sales with
contracts or sales figures.   Rather, ICP's evidence "consisted
mainly of a declaration from ICP's president and that of its
chief dairy spread supplier."[16]   Def.'s Mem. at 23.

---

[16]   With respect to economic harm, Mr. Raybuck states that:

> We are struggling to hold on to our white
> sauce suppliers, our white sauce
> customers, .  .  . and all the goodwill that we
> have built up over the 17 years of our white
> sauce business, without the major source of
> our income.   I do not think we will be able
> to sustain this current situation much
> longer.   Our import business will soon
> collapse .  .  .  .

Raybuck Decl. ¶ 35 at 14.

The crucial factors in determining whether irreparable harm exists are the immediacy of the harm and the inadequacy of future corrective relief.  *See Nat'l Juice Prods. Ass'n v. United States*, 10 CIT 48, 53, 628 F. Supp. 978, 984 (1986).  Plaintiffs seeking preliminary injunctions bear an "extremely heavy burden," particularly with respect to demonstrating irreparable harm. *Shandong Huarong Gen. Group Corp. v. United States*, 24 CIT 1279, 1282, 122 F. Supp. 2d 1367, 1369 (2000).  "It is not enough merely to establish a possibility of injury, even where prospective injury is great.  A presently existing, actual threat must be shown."  *Id*. at 1282, 122 F. Supp. 2d at 1370 (internal quotation marks omitted).

As noted by defendant, in making its case for irreparable injury, ICP relies almost entirely[17] on the Raybuck Declaration. It has submitted no financials, contracts, or other proof to make its case.  Considering the heavy burden it is required to carry, an examination of the Raybuck Declaration reveals that it is simply inadequate to its task.

---

[17]    The only other proof, the affidavit of Supplier A's president and CEO, pertains to the nature of Supplier A's production schedule and the prospective harm to Supplier A should it lose ICP's business.  *See generally* [[          ]] Decl., Conf. R. Annex A, Ex. 5.

First, ICP has failed to produce any probative evidence of the economic losses that would result from the imposition of the new duty.  Rather, plaintiff has presented the unsupported conclusory statements of Mr. Raybuck.  "[A] prayer for an injunction based solely on affidavits should be denied unless the affidavits attest with crystal clarity and without speculation to the imminence of real injury to the movant."  *Leland v. Morin*, 104 F. Supp. 401, 404 (D.C.N.Y. 1952); *see also Shree Rama Enters. v. United States*, 21 CIT 1165, 1168, 983 F. Supp. 192, 195 (1997) ("[A]ffidavits submitted by interested parties are weak evidence, unlikely to justify a preliminary injunction."); *Elkem Metals Co. v. United States*, 25 CIT 186, 192, 135 F. Supp. 2d 1324, 1331 (2001).

Second, even if the court were to credit plaintiff's claim that it would be financially unable to import white sauce at the new rate, ICP has not shown that it would be unable to purchase the white sauce from a domestic supplier.  That such a supply is available is evident from both the Raybuck and Wade Declarations.[18]  It is apparent, however, that ICP has made no effort, at least no effort that it is willing to reveal to the

---

[18]    Mr. Raybuck acknowledges the availability of a domestic source but further states that a domestic substitute would not be available "except at prices well above the price of [ICP's] imported white sauce."  Raybuck Decl. ¶ 3 at 2.

court, to determine if a domestic supply is available and, if so, at what price. Nor, for that matter, has plaintiff seemingly sought out an imported product that would fill its needs. This is particularly puzzling since it is apparent that, for a significant period prior to importing its own supply, ICP relied solely on another importer to satisfy its demands. *See* Raybuck Decl. ¶ 5 at 2.

Third, plaintiff has failed to provide this court with any specific evidence relating to the terms of its present contractual relationships or its financial situation. In addition, plaintiff has not substantiated its claim that, in the event plaintiff is forced to raise the price of its white sauce to offset the effect of the new duty, its customers will choose to purchase white sauce from another source. Indeed, plaintiff has submitted, at best, weak evidence suggesting what effect a denial of its motion would have on the health of the company. *See Thyssen Steel Co., Sw. Div. of Thyssen Inc. v. United States*, 13 CIT 323, 326, 712 F. Supp. 202, 205 (1989) ("Plaintiff . . . must set forth sufficient documentation to support its allegations in establishing the threat of irreparable harm. Plaintiff bears a heavy burden in producing this evidence.") (citations omitted). Plaintiff has not "bolstered these affidavits through independent evidence indicating exactly how

and when [the denial of the injunction] would force it out of business." *Shandong*, 24 CIT at 1283, 122 F. Supp. 2d at 1371; *see also Companhia Brasileira Carbureto de Calcio v. United States*, 18 CIT 215, 217 (1994) (not reported in the Federal Supplement) ("No hard evidence was submitted to the court indicating what specific effect loss of such sales would have upon [plaintiff]."); *Shandong*, 24 CIT at 1284, 122 F. Supp. 2d at 1371 (denying plaintiff's motion for a preliminary injunction because, among other things, "Plaintiff . . . offered no proof that it would be unable to . . . sustain its business throughout the course of this litigation.").

With respect to ICP's claim of prospective loss of goodwill owing to its inability to fulfill its contracts, plaintiff has presented no evidence other than Mr. Raybuck's declaration that this is the necessary result of the increased duties. For instance, it has not produced its contracts with either Supplier A or Customer A so it is impossible to know if a loss of goodwill will result under their provisions. *See Inner Secrets/Secretly Yours, Inc. v. United States*, 19 CIT 281, 286, 876 F. Supp. 283, 287 (1995) (stating that, by not submitting substantive evidence indicating that "contract losses or a damaged reputation as a reliable supplier [would] occur," plaintiff failed to demonstrate irreparable harm).

Finally, plaintiff's claims with respect to financial uncertainty are unconvincing.  That is, it is difficult to see how any financial certainty is achieved by the issuance of an injunction.  This is because any certainty of what duties will finally be imposed must await a final determination on the merits.

Because plaintiff's claims concerning potential financial harm, loss of goodwill, and business uncertainty are either unsupported by objective evidence or lack a logical explanation, the court finds that plaintiff has failed to demonstrate that it will face immediate and irreparable loss should liquidation of its merchandise not be enjoined.  Thus, plaintiff has not made a showing sufficient to support a finding of irreparable harm.

II.  Public Interest

Although the "[f]ailure of an applicant to bear its burden of persuasion on irreparable harm is ground to deny a preliminary injunction, [without] conclusively determin[ing] the other criteria," in this case, the remaining factors merit examination. *Bomont Indus. v. United States*, 10 CIT 431, 437, 638 F. Supp. 1334, 1340 (1986); *see also Corus Group.*, 26 CIT at 942, 217 F. Supp. 2d at 1354.  With respect to whether the grant of a preliminary injunction will better serve the public interest,

plaintiff insists that

> When a small company like ICP has relied on Customs'
> "definitive interpretation of applicable law," to build
> its business, the public interest is served by
> permitting that company to remain in operation while it
> challenges the agency's reversal of that
> interpretation.  Absent a preliminary injunction, ICP's
> import business will fail.  If ICP is forced to close
> its doors, rather than resume its import business, the
> Government will be unable to collect any further
> revenue from ICP, the DuBois, Pennsylvania economy will
> suffer the loss of a viable business and prospective
> jobs, and current ICP employees would lose their
> livelihoods.
>
> And when so fundamental a principle of Customs' policy
> as "informed compliance" is thrown into doubt by a
> revocation supported by neither facts nor law, the
> public interest is served by enjoining that revocation
> until the merits can be fully and fairly considered.

Pl.'s Mot. at 62-63 (internal citations omitted).


Plaintiff is apparently claiming that the public interest is

best served if the United States collects some, but not all, of

the duties that may be ultimately owed, and that there is a

public interest in the continuing employment of ICP's workers and

the reliance on "informed compliance."  While there may be some

merit in plaintiff's arguments regarding its workers' continued

employment and the usefulness of informed compliance,[19] ICP's

argument with respect to the payment of duties misses the mark.

_____

[19]    It is difficult, however, to see how the cause of
informed compliance would be further advanced by the issuance of
plaintiff's proposed injunction than it would be by a review of
the underlying merits of plaintiff's case.

Indeed, ICP's plan seems to be to default on its obligations with respect to duties owed should it lose on the merits. That is, one of plaintiff's primary arguments is that it is unable to pay the duties under the new tariff classification.[20] Should an injunction issue and defendant ultimately prevail, plaintiff's entries made during the pendency of this action will be liquidated at the new, higher rate. Plaintiff's inability to pay the assessed duties would result in its default and a loss of duties to the Treasury. As noted by the Government,

> [B]ecause ICP readily admits it cannot pay the increased duties required under [the Revocation], if ICP does not prevail on the merits of this action in the end, and Customs has to reliquidate these entries as dairy spread, the chance to actually recover the duty itself on these entries is permanently lost.

Def.'s Mem. at 48-49 (emphasis omitted). In other words, for defendant, the issuance of an injunction will not serve the public interest because of the potential loss of revenue should it prevail on the merits.

The court finds that, while ICP has not demonstrated that the public would be better served by the issuance of a

---

[20] Plaintiff insists that if an injunction does not issue, it will be unable to pay the duties under *either* classification, depriving the public fisc of the over [[                    ]] ICP currently pays. Additionally, ICP argues, it "will no longer pay the approximately [[                         ]] that it currently pays, further causing a loss of revenue to the Government." Pl.'s Mot. at 22 n.4.

preliminary injunction, the defendant's arguments with respect to the potential loss of revenue to the government have merit, and that this part of the four-part test favors defendant.

III. Balance of Hardships

"An inquiry into the balance of hardships requires this Court to determine which party will suffer the greatest adverse effects as a result of the grant or denial of the preliminary injunction." *Ugine-Savoie Imphy v. United States*, 24 CIT 1246, 1250, 121 F. Supp. 2d 684, 688 (2000).  This court has already determined that plaintiff has not shown that it will be irreparably harmed absent an injunction.  Nonetheless, there can be little doubt that having to pay the higher duty under the new tariff classification, or having to find a domestic source for its merchandise would amount to a substantial hardship.  The court also finds, however, that defendant will endure a significant hardship of its own should an injunction be granted and plaintiff not prevail in the underlying action, i.e., the aforementioned loss of revenue in the event that the duty contained in the Revocation is ultimately found to be correct. Given that both parties face significant hardships based on the adjudication of this motion, this factor does not tip in favor of plaintiff.

IV. Likelihood of Success on the Merits

With respect to the question as to whether plaintiff has demonstrated that it is likely to succeed on the merits, two issues are presented: first, whether this court has the jurisdiction to hear plaintiff's case, and second, whether the merits of plaintiff's cause indicate that the court will find for it at trial.

Regarding the first issue, the Court of Appeals for the Federal Circuit ("Federal Circuit") has indicated that the question of jurisdiction closely affects a plaintiff's likelihood of success on the merits. *See U.S. Ass'n of Importers of Textiles and Apparel v. United States Dep't of Commerce*, 413 F.3d 1344, 1348 (Fed. Cir. 2005). In urging that this court has jurisdiction over its case, plaintiff relies on two theories: (1) that the substantially larger duties ICP would be required to pay if the Revocation is upheld would prohibit the continued importation of its white sauce because resale at a reasonable price after importation would be impossible and, thus, ICP will cease business prior to obtaining a final court ruling, thereby rendering other judicial remedies inadequate; and (2) that, since no other subsection of § 1581 would permit both the expedited treatment necessary for the company to survive and the entry of

an injunction, those subsections are manifestly inadequate.[21]

Pl.'s Mot. at 6.  Specifically, plaintiff contends that

> Jurisdiction under Section 1581(a) is . . . inadequate
> here because . . . ICP would be out of business by the
> time a Section 1581(a) case could be brought.
> Furthermore, jurisdiction under Section 1581(h) is
> inadequate because the relief that ICP seeks is not
> limited to declaratory relief, which is the only form
> of relief available under Section 1581(h).

*Id*. at 7.  Defendant claims that the court lacks jurisdiction

---

[21]    Where the relief provided by the other subsections of
28 U.S.C. § 1581 is manifestly inadequate, 28 U.S.C. § 1581(i)
grants this court residual jurisdiction over

> any civil action commenced against the United
> States . . . that arises out of any law of the United States
> providing for ——
>
> (1) revenue from imports or tonnage;
>
> (2) tariffs, duties, fees, or other taxes on the
> importation of merchandise for reasons other than
> the raising of revenue;
>
> (3) embargoes or other quantitative restrictions
> on the importation of merchandise for reasons
> other than the protection of public health or
> safety; or
>
> (4) administration and enforcement with respect to
> the matters referred to in paragraphs (1)-(3) of
> this subsection and subsections (a)-(h) of this
> section.

28 U.S.C. § 1581(i) (2000); *see also Mukand Int'l, Ltd. v. United
States*, 29 CIT __, __, slip op. 05-164 at 4 (Dec. 22, 2005) (not
published in the Federal Supplement) ("Litigants may not invoke
jurisdiction under § 1581(i) 'when jurisdiction under another
subsection of § 1581 is or could have been available, unless the
remedy provided under that other subsection would be manifestly
inadequate.'" (quoting *Miller & Co. v. United States*, 824 F.2d
961, 963 (Fed. Cir. 1987))).

because, in its view, 28 U.S.C. §§ 1581(a) and 1581(h) each provide adequate bases upon which this court may grant relief. Indeed, defendant states that "Congress did not intend section 1581(i) to be used as a vehicle to circumvent the jurisdictional scheme when another basis of jurisdiction is adequate.  Moreover, . . . section 1581(i) was not intended to create new causes of action, nor was it meant to supersede more specific jurisdictional provisions."  Def.'s Mem. at 8-9.  Pending final briefing on the issue of jurisdiction, the court finds that the parties' arguments are sufficiently strong so as to prevent this issue from favoring either.  As a result, on the issue of jurisdiction, plaintiff does not find aid for its claim that it will prevail on the merits.

As to whether the strength of plaintiff's case indicates that it will succeed on its claims in the underlying action, the court again finds that each side has a substantial case.  In support of its argument that success on the merits favors its motion, plaintiff says:

> ICP demonstrates . . . that the premises of the
> Revocation are fabricated. . . .  ICP shows that its
> white sauce is correctly classified under HTSUS 2103 in
> accordance with General Rule of Interpretation ("GRI")
> 1. . . .  ICP establishes that classification under
> HTSUS 2103 also is consistent with GRI 3(a). . . .  ICP
> [also] shows that the white sauce is properly
> classified under HTSUS 2103 in accordance with GRI
> 3(c). . . .  Finally, . . . ICP demonstrates that the
> Revocation unlawfully deprives ICP of its due process

rights.  Because the Revocation is wholly without merit and reflects a reckless disregard for the law, ICP is highly likely to prevail in this action.

Pl.'s Mot. at 22.

Defendant maintains that the Ruling Letter was properly revoked "because [Customs] determined that the ruling was in error and not in accord with Customs' current views."  Def.'s Mem. at 28 (footnote omitted).  Moreover, defendant sets out, in considerable detail, its case asserting that Customs' classification of plaintiff's white sauce under HTSUS heading 0405 was not arbitrary and capricious and was in accordance with the law.  *See id*. at 28-29; *see generally id*. at 32-37 (analyzing Customs' classification under the factors set forth in *United States v. Carborundum Co*., 63 C.C.P.A. 98, 102, 536 F.2d 373, 377 (Fed. Cir. 1976)).

At present, the law concerning the standard for establishing likelihood of success on the merits at trial is unclear.  In a recent case, the Federal Circuit articulated the competing standards as "serious, substantial, difficult, and doubtful questions regarding the merits . . .[;] [whether] the likelihood of success and harm-related prongs are viewed as a continuum in which the required showing of harm varies inversely with the required showing of meritoriousness . . .[;] [and whether] the movant [demonstrated] at least a fair chance of success on the

merits . . . ."   *U.S. Ass'n of Importers*, 413 F.3d at 1347 (internal quotation marks omitted).  The Court, however, refrained from clarifying the standard stating that "we need not, and thus do not, resolve the dispute over the legal standard applicable in the Federal Circuit . . . ."  *Id*.  This court has held that "[w]here it is clear that the moving party will suffer substantially greater harm by the denial of the preliminary injunction . . . it will ordinarily be sufficient that the movant has raised serious, substantial, difficult and doubtful questions that are the proper subject of litigation."  *Ugine-Savoie Imphy*, 24 CIT at 1251, 121 F. Supp. 2d at 689 (internal quotation marks omitted); *see also Int'l Bhd. Of Elec. Workers v. United States*, 29 CIT __, __, slip op. 05-11 at 13 (Jan. 27, 2005) (not published in the Federal Supplement).  In any event, "the movant's evidence and arguments must actually be weighed against those of the non-movant to determine whether the movant [has established] likelihood of success" on the merits.  *U.S. Ass'n of Importers*, 413 F.3d at 1347.

In this case, plaintiff has failed to demonstrate that it will suffer greater harm by the denial of injunctive relief than would be suffered by defendant should the injunction be granted. That being the case, plaintiff cannot claim that it has met the "serious, substantial, difficult and doubtful questions"

standard.  As noted above, weighing each side's case has demonstrated that neither party has shown that it is likely to prevail on the merits.  Thus, as to the fourth part of the four-part test, plaintiff has failed to establish its entitlement to relief.


CONCLUSION

Because the court has found that plaintiff has satisfied no part of the four-part test, its motion for a preliminary injunction is denied.  Judgment shall be entered accordingly.


                                        /s/ Richard K. Eaton
                                        Richard K. Eaton

Dated:    January 11, 2006
          New York, New York